OPINION
{¶ 1} Aaron Anderson appeals from his conviction in the Dayton Municipal Court of aggravated menacing. Anderson's conviction resulted from his confrontation with Stephanie Shipworth, a clerk employed by the Montgomery County Sheriffs Office in charge of concealed weapons permits. *Page 2 
 {¶ 2} On December 9, 2006, Anderson and his girlfriend, Erica Donaldson, appeared at the Sheriffs office and asked for a temporary emergency concealed weapon permit. In order to receive one, the application must show proof that he is in immediate danger demonstrated by a police report or a protection order. Anderson presented Shipworth with a copy of a Miami Township police report which she examined and then told Anderson she could not issue him the permit because the township police had determined the "charge" was unfounded. (Tr. 8.) Ms. Shipworth testified that Anderson became angry with her and told her that all police officers are corrupt. Anderson apparently believed Shipworth was a police officer because she was in uniform with a sheriffs insignia on it.
 {¶ 3} Ms. Shipworth then testified as follows:
 {¶ 4} "A: Mister Anderson was very visibly upset with me. He was upset that I would not complete the application. He was raising his voice to me and I felt it was best that my supervisor step in.
 {¶ 5} "Q: Did you feel that he was going to cause you physical harm?
 {¶ 6} "A: Yes.
 {¶ 7} "Q: Why?
 {¶ 8} "A: He was raising his voice to me. He was flexing his hands like he was upset.
 {¶ 9} "Q: Flexing his hands. Show me what you mean.
 {¶ 10} "A: He was doing this (indicating). While he was standing up his hands were at his side —
 {¶ 11} "Q: Like in a fist?
 {¶ 12} "A: Yes. *Page 3 
 {¶ 13} "Q: Was he doing anything else?
 {¶ 14} "A: He was rocking back and forth um, making comments about how police officers are corrupt and how none of us would listen to him.
 {¶ 15} "Q: Did he stand up at all?
 {¶ 16} "A: Yes, he did.
 {¶ 17} "Q: Was he —
 {¶ 18} "THE COURT: Excuse me for one second. She said he was rocking back and forth and what?
 {¶ 19} "THE STATE: I'm sorry?
 {¶ 20} "THE COURT: He was rocking back and forth and what else?
 {¶ 21} "A: Flexing his fists.
 {¶ 22} "THE COURT: And did you see anything after that?
 {¶ 23} "A: Yeah, he was stating that all police officers were corrupt and he didn't understand why we wouldn't listen to him.
 {¶ 24} "THE COURT: Okay.
 {¶ 25} "Q: Um, did he stand up at some point?
 {¶ 26} "A: Yes, he did.
 {¶ 27} "Q: What, if anything, did he do when he stood up?
 {¶ 28} "A: He, like I said, he was standing there rocking back and forth and flexing his fists.
 {¶ 29} "Q: Okay. Did you feel he was going to do something with his hands? How did you feel he was going to harm you?
 {¶ 30} "A: I didn't know what he was going to do at that point, due to the comments he was making, and him being very visibly upset with me and with law *Page 4 
enforcement personnel in general.
 {¶ 31} "Q: Did you feel that he was going to hit you?
 {¶ 32} "A: Possibly.
 {¶ 33} "Q: Um, how did you get Tony Bell involved?
 {¶ 34} "A: I took the report and Mister Anderson's application into his office, explained why I was not issuing it due to the report being unfounded, and that's when he came out and told me to step into his office.
 {¶ 35} "Q: Alright. This is when Tony Bell came out and said this?
 {¶ 36} "A: Yeah.
 {¶ 37} "Q: What happened after that?
 {¶ 38} "A: Uh, Tony came out into the hallway. Began to explain to Mister Anderson that we cannot issue it due to the fact that there was no protection order, and that the report that he had was unfounded. Um, at that point in time he again made comments about we're all corrupt, we're not listening to him, the reason the report was unfounded was because Miami Township would not let him finish his story. At that point in time Tony advised him that he was not a deputy, that he was not a cop and Mister Anderson seemed to calm down some.
 {¶ 39} "Q: Alright. What happened after that?
 {¶ 40} "A: Um, he told him that if he could bring back a valid 8
 {¶ 41} "Q: Is this Tony Bell told —
 {¶ 42} "A: Yeah. Tony told Mister Anderson that if he would bring back a valid report and/or a protection order we would reconsider his application. At that point in time Mister Anderson said that he had contacted the FBI and that he would go get a report from them and return. *Page 5 
 {¶ 43} "Q: Okay. Did the Defendant say anything else at that point?
 {¶ 44} "A: Not at that point. When he was making the comments about us being corrupt before Tony had made the comment that we were not law enforcement officers he had made the comment that we were going to force him to dress all in black and start picking people off to take matters into his own hands.
 {¶ 45} "Q: Did you feel that he was going to include you in that?
 {¶ 46} "A: Yes, I did.
 {¶ 47} "Q: How did you take that to mean?
 {¶ 48} "A: I'd took that to mean that he was going to bring a gun to wherever whether it be Miami Township or our department and take care of these corrupt officers.
 {¶ 49} "Q: And you felt that included you?
 {¶ 50} "A: Yes, I did.
 {¶ 51} "Q: Did you feel he was going to cause you serious physical harm?
 {¶ 52} "A: Yes, I did.
 {¶ 53} "Q: What happened after that?
 {¶ 54} "A: Um, after Tony had advised him that we were not going to complete that application, after he had calmed down to a point where he would talk with him, he did in fact leave and state that he would be back with a report later that afternoon. However, he never returned that day to reapply.
 {¶ 55} "Q: Were you concerned about him returning?
 {¶ 56} "A: Yes, I was to a point where I'd asked Tony if I lock the door back to my office due to the fact that I was often back there by myself and had no way of getting help if I needed it. *Page 6 
 {¶ 57} "Q: And that was a direct result of Mister Anderson's actions?
 {¶ 58} "A: Yes, it was." (Tr. 9-12.)
 {¶ 59} On cross-examination, Ms. Shipworth reiterated that Anderson became angry when he could not get the permit. She again stated that Anderson got up out of his chair and began flexing his fists. She testified "I took that to be a menacing action." (Tr. 14.)
 {¶ 60} In his sole assignment, Anderson contends his conviction is against the manifest weight of the evidence. He contends his anger was clearly directed at police officers and not Shipworth. He contends there was nothing in the record to indicate he intended to make a threat of serious physical harm against Stephanie Shipworth or her property.
 {¶ 61} Anderson notes that he was frustrated at learning he could not get the emergency permit, he did nothing which could be characterized as a direct threat to Ms. Shipworth or her property. In support of his argument, Anderson cites State v. Richard (1998), 129 Ohio App.3d 556. In that case, the Mahoning County Court of Appeals reversed the defendant's conviction for aggravated menacing, finding that the defendant did not "knowingly" cause his former wife to believe he would cause serious physical harm to her when he stated to a CSEA caseworker that killing his former wife might "end it all" when he questioned how he was going to live or eat without his tax refund. The court found that there was no evidence that Richard would be aware that his statement to the CSEA worker would probably be conveyed to his former wife. Richard was charged with knowingly causing the CSEA worker to believe he would seriously harm "her," meaning his former wife.
 {¶ 62} The State argues that Anderson knowingly caused Ms. Shipworth to *Page 7 
believe that he would cause her serious physical harm. The State notes that the record demonstrated that Anderson is significantly taller than Shipworth, and rose above her with clenched fists, rocking back and forth and yelling as he vented his frustration at not being able to get the weapons permit. The State notes that Anderson threatened police officers when Shipworth was wearing a uniform indicating she was an employee of the sheriffs office. The State notes that Shipworth did not advise Anderson that she was not a police officer until after these statement were made by him.
 {¶ 63} A person commits aggravated menacing when he knowingly causes another to believe that the offender will cause serious physical harm to the person or property of the other person. O.R.C. Section 2903.21(A). A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. O.R.C. 2901.22(B).
 {¶ 64} A judgment is not against the manifest weight of the evidence if there is some substantial and probative evidence to support it.State v. Walker (1978), 55 Ohio St.2d 208, 213. The evidence which supports this conviction is the evidence that Anderson, who is substantially taller than Ms. Shipworth, stood up after he was told by her that he could not get the permit and angrily flexed his fists towards Ms. Shipworth, which she took as a menacing action. (Tr. 14.) The trial court could find from this evidence that Anderson was aware that this conduct would probably cause Ms. Shipworth to believe he would cause her serious harm. The Appellant's assignment of error is Overruled. The judgment of the trial court is Affirmed. *Page 8 
WOLFF. P.J., and FAIN, J., concur.
Copies mailed to:
Patrick J. Bonfield Deirdre Logan Addie J. King Matthew Ryan Arntz Hon. Bill C. Littlejohn *Page 1