The STATE of Ohio, Appellee,

v.

RICHARD, Appellant.

[Cite as *State v. Richard* (1998), 129 Ohio App.3d 556.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95CA10.

Decided Aug. 26, 1998.

*Paul Gains,* Mahoning County Prosecuting Attorney, and *Jan O'Halloran,* Assistant Prosecuting Attorney, for appellee.

*Gary N. Brott,* for appellant.

Vukovich, Judge.

Defendant-appellant, James M. Richard, Jr., appeals from his conviction of aggravated menacing after a bench trial in Mahoning County Court No. 4. For the reasons set forth below, appellant's conviction is reversed.

## STATEMENT OF FACTS

On November 29, 1993, Josephine Manos of the Mahoning County Child Support Enforcement Agency ("CSEA") received a call from appellant inquiring about CSEA's interception of his tax refund as a result of child support arrearage. Manos had spoken with appellant approximately three times before the conversation at issue. During this conversation, appellant became upset, asking how he could afford to eat and stating something along the lines of "I should just kill her, maybe that will end it all."

Manos related the conversation to her supervisor, who called the police and ordered Manos to file a police report. The CSEA supervisor also called appellant's former spouse, Celesta Moran, and warned her about the comment appellant had made to Manos. Moran asked for a copy of the police report and filed a complaint against appellant. Appellant was charged with one count of aggravated menacing, a first–degree misdemeanor violation of R.C. 2903.21.

A bench trial was held, at which Manos and Moran testified. The state presented a copy of a police report for Moran to identify as a copy of the report that she had received. Moran testified that the report stated that appellant had spoken to CSEA and asked how he was going to live or eat without his tax refund. At the close of testimony, appellant objected to the admission of the police report due to the state's failure to authenticate it. Appellee agreed to withdraw the police report.

Appellant moved for a Crim.R. 29 acquittal, citing the lack of positive identification of appellant as the voice on the phone with Manos and stating that the prosecution was misconstruing the menacing statute's application. The court denied appellant's motion, found him guilty, and sentenced him to thirty days incarceration, a $100 fine, and $51 in court costs. The court subsequently suspended the jail sentence, placing appellant on probation for one year. Appellant filed a timely appeal.

## ASSIGNMENTS OF ERROR

Appellant presents eight assignments of error in this appeal. Our holdings regarding appellant's first two assignments are dispositive of this appeal. Accordingly, we will recite but not address appellant's third through eighth assign-

ments of error. (App.R. 12[C] and its staff notes discussing judicial economy favor this method of resolution.) These assignments, made moot by our holdings, are as follows:

"The trial court erred to the prejudice of the defendant-appellant by convicting him where he was not identified in court as the declarant of telephonically transmitted words."

"The trial court erred to the prejudice of the defendant-appellant by admitting testimony of a telephone conversation without the requisite foundation."

"The court erred to the prejudice of the defendant-appellant by admitting testimony as to the contents of a police report in violation of the best evidence rule."

"The trial court erred to the prejudice of the defendant-appellant by admitting incompetent hearsay testimony regarding the contents of an unauthenticated purported police report."

"The trial court erred to the prejudice of the defendant-appellant by admitting testimony regarding the contents of an unauthenticated purported police report in violation of his right to confrontation and cross-examination."

"The trial court erred to the prejudice of the defendant-appellant by failing to grant his motion for acquittal [based on errors above]."

Appellant's first assignment of error provides:

"The court erred to the prejudice of the defendant-appellant, as a matter of law, because there is no violation under section 2903.21, Ohio Rev.Code Ann., where alleged threats are uttered to one who is neither the purported victim nor a member of the immediate family of the purported victim."

R.C. 2903.21(A), the aggravated menacing statute, states that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family." Menacing becomes aggravated when the harm threatened is serious. Appellant contends that in order to be guilty of menacing, the offender must threaten to hurt either the hearer of the threat or a member of the hearer's immediate family. Appellant states that he cannot menace his former wife by expressing his thoughts and venting his anger to a CSEA case worker who is not related to his former wife.

The appellate districts have come to conflicting resolutions of the issue of whether the above fact pattern constitutes menacing. The First District has held that the threat constituting menacing need not be made in the presence of the intended target. *State v. Roberts* (Sept. 26, 1990), Hamilton App. No. C–890639, unreported, 1990 WL 410625; *State v. Kuhn* (Mar. 28, 1984), Hamilton App. Nos.

C–830489 and C–830490, unreported, 1984 WL 6821. In *Roberts*, the defendant was convicted of menacing after telling one police officer what he would like to do to another police officer. The Twelfth District followed the First District's construction of the menacing statute in *State v. Manny* (May 26, 1992), Warren App. No. CA91–06–054, unreported, 1992 WL 113246.

Contrary to the preceding unreported cases, the Legislative Service Commission comments to R.C. 2903.21 explain that "the threatened harm need not be directed at the victim as such, but may be directed at a member of the victim's immediate family. Under former law, the person to whom the threat was addressed had also to be the object of the threatened harm." The former law, R.C. 2901.25, stated, "No person shall assault or threaten another in a menacing manner * * *." 1953 H.B. No. 1.

█ This legislative history demonstrates that prior to 1974 an offender convicted of menacing had to threaten to injure the person to whom he was speaking. After the 1974 amendment, the offender could also threaten to injure an immediate relative of the person to whom he was speaking. In addition, the general rules of statutory construction require a criminal statute to be strictly construed against the state and liberally construed in favor of the accused. *State v. Conley* (1947), 147 Ohio St. 351, 353, 34 O.O. 279, 280, 71 N.E.2d 275, 276.

Accordingly, this court takes a stance opposing that of the First and the Twelfth Districts. We follow the Eleventh District's line of reasoning in *State v. Chmiel* (Sept. 26, 1997), Lake App. No. 96–L–173, unreported, 1997 WL 663316. Chmiel was the woman who called a mental health agency and the police to get help for a psychological problem she was having involving malicious thoughts about a three–year–old neighbor. After the police warned the three–year–old's mother about Chmiel's thoughts, they charged Chmiel with aggravated menacing and menacing by stalking. The appellate court reversed Chmiel's conviction, holding:

"In the case sub judice, it is clear that the State failed to meet its burden and, therefore, the trial court erred by overruling appellant's motion for acquittal. The testimony of the neighbor girl's mother made it clear that neither she nor any family member knew appellant or ever communicated with her in any way. Quite simply, whatever thoughts that appellant was having about the neighborhood girl were never made known to the potential victim or her family until the police informed them on August 29, 1996. Without a threat made known to the potential victim or her family, a key element of both the aggravating menacing and the menacing by stalking statutes is missing. The thoughts alone of appellant were insufficient to result in a conviction." *Id.*

*Youngstown v. Moffo* (Apr. 11, 1985), Mahoning App. No. 84–CA–15, unreported, 1985 WL 10409, is a case out of this district which, although not directly on point, offers guidance to our analysis. The *Moffo* case dealt with a deficient affidavit which required reversal of Moffo's conviction for menacing because a statement contained in the affidavit revealed that the case was missing a required element. That is, the complaint stated that Moffo knowingly caused an employee to believe that Moffo would harm her employer's person or property. We reversed Moffo's conviction because the employee was not immediately related to her employer, who was the alleged victim.

In the case at bar, the complaint states that appellant knowingly caused Moran to believe that he would seriously harm her. However, instead of reading *Moffo* as a case that the state would have won had it phrased the complaint correctly, we read it as a case that leans towards the result we are reaching today: that appellant is not guilty of menacing because the alleged victim was neither the person to whom he addressed his statement nor a close relative of that person. Resolving any doubts in the interpretation of R.C. 2903.21 in favor of the accused, as we must, we sustain appellant's first assignment of error and reverse his conviction.

Because there exists a conflict among the districts and there is a chance of the Supreme Court resolving the conflict differently than we have, we will address appellant's second assignment of error, which also requires reversal.

Appellant's second assignment of error states:

"The trial court erred to the prejudice of the defendant-appellant because the finding that the defendant-appellant acted with the requisite mental state is contrary to law and against the manifest weight of the evidence."

When reviewing a manifest–weight–of–the–evidence claim, we must determine if there exists enough credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721. Weight of the evidence deals with "[t]he inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546.

Appellant contends that it was against the manifest weight of the evidence for the court to find that he possessed the requisite culpable mental state because

it was not probable that his statement to Manos would be conveyed to his former wife. The mental state for menacing is "knowingly." R.C. 2903.21(A). "A person acts knowingly, regardless of his purpose, when he is aware his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware such circumstances probably exist." R.C. 2901.22(B).

Appellant's statement was reckless under R.C. 2901.22(C) in that there existed a significant possibility that Manos would convey the statement to Moran; appellant could have reasonably expected such conveyance. However, for appellant to have spoken knowingly, it must have been "more likely than not" that Manos would relate appellant's statement to Moran. See Legislative Service Commission comment to R.C. 2901.22(B). The mental state of "knowingly" must be proven beyond a reasonable doubt.

The trier of fact is in the best position to assess the credibility of the witnesses presented at trial, to decide conflicts in testimony, and to determine the weight to be afforded the evidence offered. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. However, in the case at bar, there is no conflicting testimony.

Manos did not know Moran. Manos testified that she did not call the police or Moran and that she did not expect that her supervisor would. This testimony, by the state's witness, lends credence to appellant's contention that he had no reason to believe that it was more likely than not that Manos would convey his statement to Moran. We hold that reasonable minds could not come to the conclusion that appellant had knowledge that his statement would be conveyed to his former wife. Accordingly, we also sustain appellant's second assignment of error, which results in a reversal of his conviction.

For the foregoing reasons, the decision of the trial court is hereby reversed, and appellant is discharged.

*Judgment reversed.*

Cox and WAITE, JJ., concur.