OPINION
{¶ 1} Appellant, Matthew L. Werfel, appeals from the June 30, 2006 judgment entry of the Lake County Court of Common Pleas, which sentenced him to a sixteen month term of incarceration, after being found guilty by jury of menacing by stalking. For the following reasons, we affirm.
 {¶ 2} Substantive Facts and Procedural History *Page 2 
 {¶ 3} Appellant, Matthew L. Werfel ("Werfel"), was indicted by the grand jury on April 4, 2006, for one count of menacing by stalking, a felony of the fourth degree, in violation of R.C. 2903.211. Werfel initially entered a plea of not guilty at his arraignment on April 7, 2006. On April 28, 2006, the court granted Werfel's motion for leave to enter a plea of not guilty by reason of insanity, and a competency evaluation was ordered to determine if Werfel was sane and competent to stand trial.
 {¶ 4} Subsequent to Werfel's evaluation, on May 22, 2006, the court found that Werfel was competent to stand trial and on the same day Werfel filed a notice to withdraw his not guilty by reason of insanity plea and change his plea to not guilty.
 {¶ 5} The case proceeded to a jury trial on May 22 and May 23, 2006. The state presented evidence and testimony of three witnesses, Officer Alisa Manley ("Manley"), the victim and corrections officer for the Lake County Sheriffs Office; William Erving Winthrow ("Winthrow"), a fellow inmate and informant from the Lake County Jail; and Sergeant Anthony W. Powalie ("Sgt. Powalie"), of the Painesville Police Department, who apprehended Werfel. Also entered into evidence was a letter that Werfel wrote to Manley.
 {¶ 6} The evidence revealed that Werfel's charge and conviction stem from a series of incidents where he engaged in a pattern of conduct that caused Manley to feel threatened and suffer mental distress. The incidents began when Werfel was an inmate at the Lake County Jail and he would engage in various odd behaviors to attract Manley's attention such as tying a string to a bar of soap and letting it trail like a "mouse" right outside of his cell. Werfel was eventually discharged and by early February of 2006, Manley testified that she and other correctional officers noticed *Page 3 
Werfel had been consistently loitering around the jail for a good portion of the month of January.
 {¶ 7} Then, on February 5, 2006, while Manley was working the night shift, she observed Werfel, from behind the glass of the sheriffs office, sitting in the vestibule area between the two locked doors of the entrance to the sheriffs department. One of the officers asked him to leave the building since such loitering is prohibited. Approximately forty-five minutes later, Werfel returned to the vestibule area, where he proceeded to dance and sing while loudly listening to music on his headphones. This behavior continued for the rest of the night.
 {¶ 8} At the end of Manley's shift, at approximately 6:00 a.m., Manley unlocked the doors of the sheriffs department. Werfel then walked into the department and directly to the glass of the sheriffs office, dropped an object into the slot of the intake window, and said "I got my eye on you." The object turned out to be a rubber bouncy ball with an eyeball painted on it.
 {¶ 9} The following day, as Manley was being escorted into the building, she noticed Werfel again loitering around the building. At around 4:30 a.m. Manley was given a letter from another officer, Officer Ciperman, who found the letter in his mailbox addressed to Manley. The letter, from Werfel, professed his interest in Manley and confirmed that he had been watching her. Manley began to read the letter, but upon reading the first few lines, she jumped to the ending to identify the author. However, the letter was unsigned and she became instantly fearful. She stopped reading the letter and took it directly to her supervisors. Manley then read the letter with her supervisors and identified the author as Werfel. *Page 4 
 {¶ 10} On the days following this incident, Werfel was again observed loitering around the Sheriffs Department. Sergeant Powalie noticed that Werfel's vehicle had been parked in the lot for several days and that it would sometimes be moved in different positions. In fact, Werfel would park his motor vehicle, in which he was living at the time, across the street from the department.
 {¶ 11} On the night of February 13, 2006, Sergeant Powalie decided to investigate the vehicle since it had been facing the jail for some time and the windows were fogged, which indicated that someone was present inside. Powalie then proceeded to call out to the vehicle and call dispatch. The window of the vehicle rolled down and Powalie identified the occupant as Werfel. The belongings in the vehicle indicated that Werfel was living out of the vehicle. Powalie then inquired as to why Werfel was parked across from jail. Werfel responded, "I can't control what I do."
 {¶ 12} Another officer, Officer Decaro, arrived on the scene, and informed Powalie that Werfel was present because he was possibly stalking one of the corrections officers. Powalie then confirmed this report by calling Manley, who was off-duty at the time, and another officer, Officer Bontrager. Powalie then approached Werfel and asked him if he was stalking anybody. Werfel responded, "Blame it on Manley." Subsequently, Werfel was arrested and Manley filed a complaint report with the Painesville City Police Department.
 {¶ 13} While Werfel was awaiting trial, in late March of 2006, fellow inmate, Winthrow, informed the corrections officers that Werfel was making threatening statements against Manley. He then filled out a written statement attesting to such with the Painesville Police Department, where he reported that Werfel informed him that *Page 5 
Manley wanted to "suck his dick" and that "if he has to do time on this case he is going to kill the bitch." When Manley was informed of these statements, she became even more frightened and hyperaware of her surroundings.
 {¶ 14} On May 26, 2006, the jury returned a verdict of guilty for one count of menacing by stalking on May 24, 2006, a fourth degree felony, since the jury also found that he had a previous conviction for menacing by stalking. The court then deferred the matter for sentencing to June 28, 2006.
 {¶ 15} After the sentencing hearing, the court issued a judgment entry on June 30, 2006, which sentenced Werfel to a sixteen month term of imprisonment, with credit for one hundred thirty-six days served. Werfel was also notified of the possibility of post-release control following release up to a maximum of three years.
 {¶ 16} Werfel then timely filed a notice of appeal on July 27, 2006 and raises the following assignment of error:
 {¶ 17} "The State failed to meet its constitutional burden of proof beyond a reasonable doubt when it failed to offer sufficient evidence that Mr. Werfel acted knowingly towards the complainant and engaged in a pattern of conduct, in violation of the Due Process Clause of theFourteenth Amendment to the United States Constitution."
 {¶ 18} Sufficiency of Evidence — Knowingly Acted
 {¶ 19} In his sole assignment of error, Werfel argues that the state presented insufficient evidence to establish that he was guilty of menacing by stalking beyond a reasonable doubt. Specifically, Werfel contends that the state failed to produce sufficient evidence on two elements, namely, that he acted knowingly when he caused *Page 6 
Manley to feel threatened and in fear of harm; and that he engaged in a pattern of conduct to do so. We find these contentions to be without merit.
 {¶ 20} "[Sufficiency of the evidence * * * challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of the evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all elements of the charged offense proven beyond a reasonable doubt." State v.McKinney, 11th Dist. 2006-L-169, 2007-Ohio-3389, ¶ 17, citing State v.Grayson, 11th Dist. No. 2006-L-153, 2007-Ohio-1772, ¶ 18, citingState v. Barno (Sept. 21, 2001), 11th Dist. No. 2000-P-0100, 2001 Ohio App. LEXIS 4280, 16, citing State v. Jones (2001), 91 Ohio St.3d 335,345.
 {¶ 21} Further, [t]he claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *" (Citations omitted.) "In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *." In re:Anthony White, 11th Dist. No. 2006-A-0065, 2007-Ohio-1782, ¶ 6, citingState v. Thompkins (1997), 78 Ohio St. 3d 380, 386. "Thus, sufficiency of the evidence tests the burden of production." Id., citingThompkins at 390.
 {¶ 22} R.C. 2903.211(A)(1) provides:
 {¶ 23} "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." *Page 7 
 {¶ 24} A person acts "knowingly" when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 25} Further, a "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. * * *" R.C. 2903.211 (D)(1).
 {¶ 26} Werfel contends that because he never communicated direct words of harm to Manley the state failed to prove that he knowingly caused Manley to feel threatened of physical harm or to suffer mental distress. Werfel contends that he was merely pursuing Manley as a romantic interest and that he was not aware that his actions before his arrest were causing Manley apprehension.
 {¶ 27} However, we note at the outset that Manley is well versed as to what types of behavior constitute "stalking," since among his past convictions, he has previously been convicted for menacing by stalking three other times, although the parties stipulated that only one previous conviction would be presented to the jury. While no one, including Manley herself, told Werfel directly that Manley desired Werfel to leave her alone, by his very actions, Werfel knowingly acted in such a way that would cause a reasonable person to feel threatened of physical harm and/or suffer mental distress.
 {¶ 28} Werfel cites State v. Chmiel (Sept. 26, 1997), 11th Dist. No. 96-L-173, 1997 Ohio App. LEXIS 4364, for the proposition that the stalker must directly communicate a threat to the victim. InChmiel, neither the victim nor her mother was *Page 8 
aware that the appellant was having thoughts of harming her. Indeed, the appellant herself revealed that she was having thoughts about the victim to a mental help hotline counselor, who then informed the appellant that she was required to notify the police. The appellant then called the police and inquired as to whether a warrant was outstanding for her arrest. The police deduced from which street appellant was calling and searched up and down the block until they located both the appellant and the mother of the victim. The police gave the appellant the option of treatment or prison. However, after choosing and undergoing treatment, upon her release she was apprehended for menacing by stalking.
 {¶ 29} Chmiel presents a situation which is completely opposite to the one that is presented here. The appellant in that case never engaged in threatening behaviors toward the victim. Indeed, her "thoughts" were only discovered after she revealed them while trying to seek psychiatric assistance. Thus, we reversed her conviction and held that "[o]ne's thoughts are not grounds for one's arrest and conviction." Id. at 8.
 {¶ 30} Similarly, the second case Werfel cites in support of this proposition, State v. Richard Jr. (1998), 129 Ohio App. 3d 556, is distinguishable for the same reasons. In that case, the appellant's "threat" was made to a county child support agent under circumstances where he was discussing his tax refund, which was intercepted by county services for child support arrearages. He grew very upset and asked the agent, "How he would be able to afford it all?" He then proceeded to make the statement, "I should just kill her, maybe that will end it all." The agent reported this statement to her supervisor, who then called the police. Thus, the Seventh District Court of Appeals reversed the appellant's conviction for menacing since the alleged victim was neither *Page 9 
the person to whom he addressed the statement nor a close relative of the victim. Id. at 561.
 {¶ 31} Direct communication is not defined by words alone, but also by nonverbal acts and behaviors that are directed at the victim of which the victim is aware. In both Chmiel and Richards, no threat was ever directed toward the victims. Indeed, the victims were utterly unaware of any potential threat. However, in his case, Werfel made his presence and interest known to Manley. He staked out the jail for almost a month and loitered around the vestibule area of the department during Manley's shift, and while in her view, he engaged in attention seeking behavior. He then entered the police department and gave Manley a rubber ball with an eyeball painted on it and said only, "I've got my eye on you." Manley then received a letter, which professed his love in a psychotic fashion. Several days later, Werfel was finally apprehended after he continued to reside in the parking lot across the street from the police department.
 {¶ 32} Werfel argues that because the only statement of direct harm towards Manley, was told to a third person, unrelated to Manley, that the state produced insufficient evidence that he knowingly caused Manley to feel a threat of physical harm or mental distress. Werfel told Winthrow that "if he did time for this, he would kill her." At the time this statement was made, Werfel was already awaiting trial in this case. Furthermore, Manley testified that prior to this, she was suffering from mental distress over Werfel's behavior. Indeed, Manley had her fellow officers escort her on and off the premises during the days Werfel was staking out the department. Whether or not the statement Werfel made to Winthrow is considered a direct threat is irrelevant since it is *Page 10 
only one incident in a sequence of behaviors from which the jury could find that Werfel knowingly engaged in a pattern of conduct that would induce fear of harm in Manley.
 {¶ 33} Whether or not the words of Werfel's letter or his statement, "I've got my eye on you" constitute communications of direct harm is a determination that is better left to the finder of fact since rational minds can construe those words in conjunction with Werfel's behavior as threatening of physical harm and causing mental distress. "`A reviewing court [should] not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'"McKinney at ¶ 18, citing State v. Teachout, 11th Dist. No. 2006-L-081,2007-Ohio-1642, ¶ 38.
 {¶ 34} This is especially so in cases of stalking since "[s]talkers engage in psychological warfare, which by its nature is devious, insidious, and subtle. Veiled references to third parties of dire consequences to the victim are stock-in-trade to such perpetrators. While such actions may be more difficult to prove than direct threats, the trial court should not be precluded from considering such third-party incidents as appropriate evidence. This of course presumes that such evidence comports with the rules of evidence." Paulus v.Rucker, 11th Dist. No. 2002-P-0080, 2003-Ohio-2816, ¶ 35, (Christley, J., concurring).
 {¶ 35} Sufficiency of Evidence — Pattern of Conduct
 {¶ 36} As for Werfel's second issue, we determine that by the very summation of his actions above, sufficient evidence was presented from which a jury could reasonably find that Werfel engaged in "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or *Page 11 
incidents * * *" as required by R.C. 2903.211 (D)(1). Werfel's inappropriate behavior must be examined in its totality. This is especially so since "even if some of his actions comprising this behavior, considered in isolation, might not appear to be particularly threatening," taken together they indeed establish a pattern of conduct of inappropriate harassment. Tuuri v. Snyder (Apr. 30, 2002), 11th Dist. No. 2000-G-2325, 2002 Ohio App. LEXIS 2060, 9, citing Still v.Still (Apr. 23, 1999), 2nd Dist. No. 17416, 1999 Ohio App. LEXIS 1808, 5.
 {¶ 37} Thus, we determine that sufficient evidence existed from which a jury could find beyond a reasonable doubt that Werfel knowingly engaged in a pattern of conduct that he knew would cause Manley to feel threatened of physical harm or mental distress. Werfel's assignment of error is without merit.
 {¶ 38} The judgment of the Lake County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs,
ROBERT A. NADER, J., Ret., Eleventh Appellate District, sitting by assignment, dissents with a Dissenting Opinion.