[Cite as *State v. Johnson*, 185 Ohio App.3d 654, 2010-Ohio-315.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

The STATE OF OHIO,

     APPELLEE,                                     CASE NO. 5-09-28

     v.

JOHNSON,                                      O P I N I O N

     APPELLANT.

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2009-CR-0017**

**Judgment Reversed and Cause Remanded**

**Date of Decision: February 1, 2010**

APPEARANCES:

     Mark C. Miller and Drew A. Wortman, for appellee.

     Robert E. Searfoss III, for appellant.

**WILLAMOWSKI, Presiding Judge.**

{¶1} Defendant-appellant, Brett Johnson, brings this appeal from the judgment of the Court of Common Pleas of Hancock County. For the reasons set forth below, the judgment is reversed.

{¶2} On January 27, 2009, Johnson was indicted on two counts of trafficking in cocaine, in violation of R.C. 2925.03(A), fifth-degree felonies. Johnson entered a plea of not guilty on April 8, 2009. On May 12, 2009, a change-of-plea hearing was held. Johnson's attorney, Kenneth J. Sass, notified the court at the hearing that there was a potential conflict of interest because the confidential informant was a former client of Sass's. The trial court then engaged in a dialogue with Johnson concerning the conflict. Johnson indicated that he wished to waive the conflict and proceeded to change his plea to one of guilty. On July 13, 2009, the trial court sentenced Johnson to a total prison term of 22 months. Johnson now appeals the judgment and raises the following assignment of error.

> The trial court violated [Johnson's] right to assistance of counsel as provided by the Sixth Amendment to the United State[s] Constitution by failing to either appoint separate counsel or to inquire into the existence of an actual conflict of interest despite knowledge of a potential conflict of interest held by [Johnson's] trial counsel.

{¶3} The sole assignment of error alleges that the trial court erred by not appointing different counsel when a conflict-of-interest issue was raised, thus

denying him effective assistance of counsel. The Ohio Supreme Court has dealt

with the issue of conflict of interest by defense counsel in *State v. Gillard* (1992),

64 Ohio St.3d 304, 595 N.E.2d 878. In *Gillard*, the defendant was represented by

an attorney who also represented a witness, in a pending matter. Although the

attorney did not believe there was a conflict of interest and the parties expressed a

waiver of any conflict, the Ohio Supreme Court reversed the decision and

remanded for the trial court to hold a hearing to determine whether an actual

conflict of interest existed. In doing so, the Ohio Supreme Court stated as

follows.

> In [*Holloway v. Arkansas* (1978), 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426], the United States Supreme Court concluded that defense counsel's repeated objections to the joint representation, accompanied by his assertions of a risk of conflict of interest, required the state trial court to either appoint separate counsel or ascertain whether the risk of conflict was too remote to warrant the appointment of separate counsel. Id. at 484, 98 S.Ct. at 1178, 55 L.Ed.2d at 434. The court held that the state trial court's failure to inquire into the risk of conflict unconstitutionally endangered the defendants' Sixth Amendment right to counsel and required reversal of the defendants' convictions whether or not an actual conflict of interest existed, and whether or not prejudice could be shown. Id. at 487-491, 98 S.Ct. at 1180-1182, 55 L.Ed.2d at 436-438.

> *Cuyler v. Sullivan* [1980, 446 U.S. 335, 100 S.Ct. 1709, 64 L.Ed.2d 333] is another case involving multiple representation. *Sullivan*, supra, stands for the proposition that the duty imposed in *Holloway,* supra, for a state trial court to inquire into the possibility of conflicts of interest posed by multiple representation only arises in cases where the trial judge knows *or reasonably should know* that a possible conflict of interest exists. Id. 446 U.S. at 346-347, 100

S.Ct. at 1717, 64 L.Ed.2d at 345-346. See, also, [*Wood v. Georgia* (1981), 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220]. Thus, the duty to inquire into the possible conflicts of interest posed by joint representation of codefendants may arise even though no party to the proceeding specifically objects to the multiple representation.

* * *

In *Wood*, supra, former employees of an adult movie theater and bookstore were convicted for distributing obscene materials in violation of a Georgia statute. The employees received fines and jail sentences for their activities, but were placed on probation with the condition that they make regular installment payments toward satisfaction of the fines. When the employees failed to make the required payments, the matter proceeded to a probation revocation hearing where the employees offered evidence that they were unable to pay the fines and expected that their former employer would do so. At this hearing, the state raised the issue that the employees' attorney was hired by the former employer and, therefore, a possible conflict of interest existed. The trial court did not inquire into the alleged conflict and ordered revocation of the probations if arrearages were not paid within five days. Unable to make such payments, the employees moved to modify the conditions of their probation. The trial court denied this motion and ordered the employees to serve the remaining portions of their jail sentences. The Georgia Court of Appeals affirmed and the United States Supreme Court granted certiorari to determine whether the imprisonment of the employees solely because of their inability to make the installment payments violated equal protection guarantees.

In *Wood*, supra, the United States Supreme Court, sua sponte, raised the issue concerning the possibility of a conflict of interest, stating that "[w]here, as here, a possible due process violation is apparent on the particular facts of a case, we are empowered to consider the due process issue." Id. at 450 U.S. at 264-265, 101 S.Ct. at 1100, 67 L.Ed.2d at 226. Based upon a review of the record, the court was unable to conclude whether the employees' attorney labored under an actual conflict of interest, but the court nevertheless held that "* * * the record does demonstrate that the *possibility* of a conflict of interest was sufficiently apparent at the

time of the [probation] revocation hearing to impose upon the [trial] court a duty to inquire further." Id. at 272, 101 S.Ct. at 1104, 67 L.Ed.2d at 230-231. The court also found that any doubt as to whether the trial court *should have been aware* of the conflict-of-interest problem was dispelled by the fact that the state explicitly raised the issue at the probation revocation hearing and requested that the trial court look into it. Id. at 272-273, 101 S.Ct. at 1104, 67 L.Ed.2d at 231. Accordingly, the *Wood* majority vacated the judgment of the Georgia appellate court and remanded the cause for a determination by the state trial court whether an actual conflict of interest existed. Id. at 273-274, 101 S.Ct. at 1104, 67 L.Ed.2d at 231. The court further ordered that if the state trial court determined, upon remand, that an actual conflict existed (and that there was no valid waiver of the right to independent counsel), the trial court must conduct a new revocation hearing free from conflicts of interest. Id.

A review of *Holloway, Sullivan* and *Wood*, supra, clearly demonstrates that where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. The duty to inquire arises not only from the general principles of fundamental fairness, but from the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest. See, generally, *Wood*, supra. Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or "adverse effect" will be presumed. See, e.g., *Holloway, Sullivan* and *Wood*, supra.

Although we cannot be sure that an actual conflict of interest existed, there is a clear possibility of conflict of interest on the facts of this case. * * * The trial court was constitutionally required to conduct an inquiry into the possible conflict of interest to determine whether appellant had received, and would receive, the right to conflict free counsel guaranteed him by the Sixth Amendment to the United States Constitution.

The argument has been raised herein that our review of the conflict-of-interest issue is limited to the plain error analysis of Crim.R. 52(B). This may be true but if a conflict of interest affecting appellant actually existed in this case, it would be clearly improper for us to speculate that the outcome of appellant's trial would not have been different had appellant received representation free from conflicts of interest. We are keenly aware of the overwhelming evidence of appellant's guilt, but it is our job to ensure that even this appellant receive the protections to which he is entitled.

*Gillard*, 64 Ohio St.3d at 309-312, 595 N.E.2d 878.

{¶4} This court has addressed the duty of the trial court to inquire into potential conflicts of interest in *State v. McDuffie* (May 23, 2001), 3d Dist. No. 9-2000-92, 2001 WL 542114, and in *State v. Myles* (May 23, 2001), 3d Dist. No. 9-2000-93, 2001 WL 542115. Both of these cases involved codefendants represented by one attorney. In those cases, this court affirmed the judgment because the trial court explained to the defendants that there was a conflict of interest, what this conflict could potentially mean to each of them, and that they both had the right to have separate counsel appointed for them. The trial court also advised the defendants that they had the right to change their minds and request separate counsel at any time. After being given this information, the defendants made an informed decision to waive the conflict of interest.

{¶5} The duty to inquire, as set forth in *Gillard*, has been explained as follows.

> "When reviewing a claim of conflict of interest, this court must resolve two distinct issues. The first issue is whether the trial court had a duty to investigate the potential conflict of interest. See [*Gillard,* 64 Ohio St.3d 304, 595 N.E.2d 878]. If the answer to that inquiry is affirmative and the trial court did not make such an inquiry, then the case must be remanded to the trial court for its inquiry as to whether an actual conflict of interest existed. Id. at 312, 595 N.E.2d at 883. If the answer to that inquiry is negative, then this court must determine whether an actual conflict of interest adversely affected the attorney's performance. *State v. Manross* (1988), 40 Ohio St.3d 180, 532 N.E.2d 735, syllabus, certiorari denied (1989), 490 U.S. 1083, 109 S.Ct. 2106, 104 L.Ed.2d 667."

*State v. Walker* (1998), 130 Ohio App.3d 247, 251, 719 N.E.2d 1042, quoting *State v. Ingol* (1993), 89 Ohio App.3d 45, 48, 623 N.E.2d 598.

{¶6} In this case, the question of a potential conflict of interest was raised by defense counsel to the trial court, so the trial court and defense counsel were aware of the potential conflict. Thus, pursuant to *Gillard*, 64 Ohio St.3d 304, 595 N.E.2d 878, the trial court had an affirmative duty to inquire as to whether an actual conflict of interest was present. A review of the record indicates that the trial court extensively discussed the effect of a waiver on the *potential* conflict of interest, but did not inquire as to whether an actual conflict of interest was present. The trial court also did not inform Johnson that he could have a new attorney if he so wished. Without more information concerning the circumstances of the conflict, this court cannot ascertain whether the waiver was sufficient. This is especially true with regard to whether or not it was necessary to advise Johnson

that another attorney would be appointed for him if Johnson was not comfortable with the potential conflict as laid out by the court.

{¶7} For example, if the representation of the informant was several years earlier and on a matter entirely unrelated to the present case, there might well be no actual conflict of interest and hence no need for any admonishment. On the other hand, if the representation of the informant was related to matters that led to the current charges against the defendant, there might be a conflict significant enough to override even the most thorough of admonishments. Thus, the trial court, in this case, needed to inquire into the prior representation of the confidential informant to determine the required scope of the waiver, or whether new counsel was required. Having failed to conduct this inquiry in this case, the trial court did not comply with the requirements of *Gillard,* 64 Ohio St.3d 304, 595 N.E.2d 878.

{¶8} Pursuant to *Gillard*, the matter must be reversed and remanded for the trial court to hold a hearing to determine whether an actual conflict of interest existed. Id. at 312. If a conflict of interest is found, the trial court must then conduct a new trial free from conflicts of interest. Id. However, if no actual conflict of interest is found, then no new trial is necessary. Id. For the reasons set forth above, the assignment of error is sustained.

{¶9}   The judgment of the Court of Common Pleas of Hancock County is reversed, and the matter is remanded for further proceedings.

Judgment reversed
and cause remanded.

SHAW and PRESTON, JJ., concur.

_____