[Cite as *State v. Fisher*, 2021-Ohio-3919.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200461 |
| | | C-200463 |
| Plaintiff-Appellee, | : | C-200464 |
| | | C-200465 |
| vs. | : | TRIAL NOS. 20CRB-20651 A-B |
| | | 20CRB-20654 |
| JAMES FISHER, | : | 20CRB-20697 |
| Defendant-Appellant. | : | *O P I N I O N.* |

Criminal Appeals From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  November 3, 2021

*Andrew W. Garth,* City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Susan M. Zurface,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} After defendant-appellant James Fisher sent a flurry of threating messages to Star Higgins, his ex-girlfriend, police arrested him on her street with a firearm concealed in his vehicle. The trial court convicted Mr. Fisher of menacing by stalking, telecommunications harassment, aggravated menacing, and carrying a concealed weapon. Now Mr. Fisher appeals, raising an array of constitutional issues, challenging the weight and sufficiency of the evidence, and protesting the forfeiture of his firearm. We sustain Mr. Fisher's challenge to the forfeiture of his firearm, but otherwise affirm the trial court's judgment.

I.

{¶2} Mr. Fisher and Mrs. Higgins's relationship deteriorated, leading to their separation shortly after the birth of their son approximately nine years ago. Since that separation, Mr. Fisher vanished from his son's life. Although he contacted Mrs. Higgins every couple of years to inquire about the child, he made no effort to establish a relationship with his son.

{¶3} Desiring to chart a new course, in October 2020, he reached out to Mrs. Higgins, asking about his son and expressing a desire to become involved in his life. But when Mr. Fisher's communications strayed to other topics, Mrs. Higgins drew a line in the sand, forbidding him from contacting her, except about their son. In response, Mr. Fisher lashed out, chastising Mrs. Higgins and criticizing her marriage.

{¶4} Two days later, with Mrs. Higgins staying silent, Mr. Fisher erupted. From October 25 to October 27, Mr. Fisher bombarded Mrs. Higgins with a tirade of threatening text messages and phone calls. The communications deplored Mrs. Higgins related to the custody dispute over their son. In this volley of texts, among other things, Mr. Fisher

2

threatened to cut a tattoo off her husband's arm that was dedicated to Mr. Fisher's son, he sent a picture of him pointing a gun at the camera, and he threatened to kill Mrs. Higgins and her husband. In addition, he threatened to kill Judge Fanon Rucker, a former Hamilton County Municipal Court judge, because Mr. Fisher mistakenly believed he was involved in the custody dispute. In all, Mr. Fisher sent seventy pages' worth of text messages and made at least four calls to Mrs. Higgins from October 23 to 27. During this period, Mrs. Higgins also discovered a piece of paper left on the windshield of her car that ostensibly ordered Mrs. Higgins's husband to cover up his tattoo.

{¶5} Dismayed by this turn of events, Mrs. Higgins eventually called the police. The police filed warrants for Mr. Fisher's arrest and patrolled the area looking for him. Shortly after midnight, an officer arrested him on Mrs. Higgins's street. At the time of his arrest, Mr. Fisher admitted possessing a firearm in his car, which the officer found concealed beneath an article of clothing.

{¶6} Mr. Fisher was charged with menacing by stalking, telecommunications harassment, aggravated menacing, and carrying a concealed weapon. At a pretrial hearing, Mr. Fisher's trial counsel, Joshua Thompson, revealed that he had a connection with Judge Rucker, the victim of the aggravated menacing charge, because he had contributed to Judge Rucker's campaign for prosecuting attorney. He appropriately disclosed the connection to Mr. Fisher, and Mr. Fisher did not protest or request additional information. At a subsequent pretrial hearing several weeks later, however, Mr. Fisher had a change of heart, requesting a continuance to obtain private counsel based on concerns about counsel's potential conflict of interest. The trial court refused his request, noting that Mr. Fisher could have raised his concern at two intervening pretrial hearings. Without exploring the

nature of the potential conflict, the trial court conveyed its "absolute confidence" that Mr. Thompson could ethically represent Mr. Fisher.

{¶7} The case proceeded to a bench trial, with the court finding Mr. Fisher guilty on all four charges. After Mr. Fisher underwent a psychological evaluation, the trial court sentenced him to an aggregate sentence of 18 months. On appeal, Mr. Fisher argues that the convictions infringed on his right to conflict-free counsel, contravened his right to a trial by jury, were unsupported by the weight and sufficiency of the evidence, deprived him of his right to effective assistance of counsel, and violated Ohio law on the forfeiture of property.

II.

{¶8} Mr. Fisher's first assignment of error challenges the alleged deprivation of his Sixth Amendment right to conflict-free counsel. He maintains that (1) the trial court failed to conduct an adequate inquiry to ascertain whether a conflict of interest existed, and (2) the record demonstrates the presence of an actual conflict of interest warranting reversal of the convictions.

A.

{¶9} We agree with Mr. Fisher that the trial court initially did not conduct an adequate inquiry into a potential conflict of interest, a point underscored by an intervening Supreme Court opinion. "A trial court's affirmative duty to inquire [into a potential conflict of interest] arises when the trial court knows or has reason to know that a possible conflict of interest exists or when a defendant objects." *State v. Williams*, Slip Opinion No. 2021-Ohio-3152, ¶ 6. A duty to inquire arose when Mr. Fisher sought to substitute Mr. Thompson for private counsel because of his contribution to the victim's campaign. *See id.* at ¶ 17 (if the record reveals "the possibility of incompatible interests," it triggers the trial court's duty to inquire).

{¶10} Although the trial court discussed this matter at length on the record, it did not inquire of defense counsel as to the nature and amounts of any campaign involvement, or any other indicia that might suggest a close relationship with the victim. Without such an inquiry, the court offered no findings on the ability of Mr. Thompson to zealously represent Mr. Fisher notwithstanding his contribution, nor are any pertinent facts along these lines apparent in the transcript. *See State v. Feemorlu*, 2015-Ohio-4528, 46 N.E.3d 1108, ¶ 16 (3d Dist.) (trial court's inquiry was inadequate where "trial court did not ask whether [the attorney] would be able to competently represent [the defendant] or whether she had learned any facts relevant to [the defendant's] case from [the source of the potential conflict]."); *State v. Johnson*, 185 Ohio App.3d 654, 2010-Ohio-315, 925 N.E.2d 199, ¶ 6 (3d Dist.) (inquiry into waiver of conflict of interest, but not whether an actual conflict was present, was an insufficient inquiry); *State v. Garcia*, 6th Dist. Huron No. H-06-003, 2007-Ohio-1525, ¶ 17 ("[T]he trial court made adequate inquiry * * * [w]hen * * * the court questioned [jointly represented defendants] and addressed the inherent difficulties in multiple representation.").

{¶11} As a result, we issued a limited remand for the trial court to conduct a hearing to determine whether an actual conflict of interest existed. *See, e.g.*, *In re J.W.*, 8th Dist. Geauga No. 2017-G-0139, 2018-Ohio-2020, ¶ 16 ("[W]e remand this case for fifteen (15) days from the date of this opinion for the trial court to conduct a hearing to determine whether an actual conflict of interest existed."), citing *State v. Gillard,* 64 Ohio St.3d 304, 595 N.E.2d 878 (1992); *Williams* at ¶ 7 ("If the trial court's affirmative duty arose but it did not inquire, the case must be remanded to the trial court with instructions to conduct a hearing to determine whether an actual conflict of interest existed."). Our order instructed the trial court to ascertain whether counsel's connection with the victim casts doubt on the

5

integrity of the trial process or otherwise undermines confidence in the verdict. *See Feemorlu* at ¶ 17. We noted that the relevant considerations in this case would include the amount of any campaign contribution(s), the extent of any involvement by counsel as a volunteer in Judge Rucker's campaign, and any other connections with Judge Rucker that might jeopardize counsel's ability to zealously defend Mr. Fisher on the aggravated menacing charges.

{¶12} The trial court ably and thoroughly explored these issues on remand. Scheduling a prompt hearing, it determined that Mr. Thompson made two donations to Judge Rucker's campaign, totaling $70. Mr. Thompson testified that he had no other involvement in Judge Rucker's campaign whatsoever, adding that he had only very limited contact with Judge Rucker professionally, practicing in front of him on a few occasions. The trial court concluded that no actual conflict of interest existed based on these facts.

{¶13} We hold that the trial court's inquiry on the limited remand sufficed to make an informed determination on whether an actual conflict of interest existed. We accordingly turn to the substance of Mr. Fisher's conflict of interest attack.

B.

{¶14} To prevail in establishing an actual conflict of interest, Mr. Fisher "must demonstrate that 'an actual conflict of interest' adversely affected his lawyer's performance." *State v. Barrow*, 2018-Ohio-1703, 111 N.E.3d 714, ¶ 37 (1st Dist.), quoting *Wood v. Georgia*, 450 U.S. 261, 273, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). That said, "[t]he trial judge has 'wide latitude' in determining that an actual or potential conflict exists." *State v. Keenan*, 81 Ohio St.3d 133, 137, 689 N.E.2d 929 (1998), quoting *United States v. Mays*, 69 F.3d 116, 121 (6th Cir.1995). "Therefore, we will only reverse the trial court's decision if 'the trial court's

attitude [was] unreasonable, arbitrary, or unconscionable.' " *Feemorlu*, 2015-Ohio-4528, 46 N.E.3d 1108, at ¶ 13, quoting *Keenan* at 137.

{¶15} Consistent with the trial court's assessment of the evidence, we do not believe that a $70 donation alone establishes diverging interests between Mr. Thompson's representation of Mr. Fisher and his connection with Judge Rucker. *See Williams*, Slip Opinion No. 2021-Ohio-3152, at ¶ 18 (finding no conflict of interest when the record did not demonstrate that jointly represented defendants' "interests diverged"). Although defense counsel's connections with the alleged victim could conceivably establish a conflict of interest that might adversely affect his performance, in this case counsel's connections with Judge Rucker were de minimis, and therefore the trial court did not abuse its discretion in rejecting the conflict claim. We accordingly overrule Mr. Fisher's first assignment of error.

III.

{¶16} Mr. Fisher's second assignment of error alleges a deprivation of his right to a jury trial under the Sixth Amendment to the United States Constitution. "The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a jury trial." *State v. Sweeting*, 2019-Ohio-2360, 138 N.E.3d 567, ¶ 10 (1st Dist.); *see State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, ¶ 6. Nevertheless, Crim.R. 23(A) provides that a criminal defendant "may knowingly, intelligently, and voluntarily waive in writing his right to trial by jury." "Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial." R.C. 2945.05.

{¶17} This is an unusual case where Mr. Fisher concedes that he waived his right to a jury trial and that this waiver satisfied all of the statutory and caselaw requirements. Mr. Fisher nevertheless maintains that an administrative order suspending jury trials in Hamilton County because of the COVID-19 pandemic essentially undermined the voluntariness of his waiver. In other words, he insists that this administrative order posed an unconstitutional Hobson's choice—wait indefinitely for the resumption of jury trials or forego that cherished right.

{¶18} Mr. Fisher cites no authority for the proposition that a temporary suspension of jury trials violated the Sixth Amendment, nor any cases invalidating waivers of the right to a jury trial made during such a suspension. While we realize that the suspension of jury trials placed Mr. Fisher (along with countless others) in a predicament, we see no reason to disturb an otherwise valid waiver on this record. We thus overrule Mr. Fisher's second assignment of error.

## IV.

{¶19} Mr. Fisher's third assignment of error challenges the weight and sufficiency of the evidence in support of his convictions. In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 7 (1st Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶20} And "[t]o determine whether a conviction is supported by sufficient evidence, 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

A.

{¶21} The trial court convicted Mr. Fisher of menacing by stalking under R.C. 2903.211, which provides "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person."

{¶22} Mr. Fisher's challenge to the weight and sufficiency of the evidence supporting his menacing by stalking conviction hinges solely on whether the evidence sufficed for the trial court to attribute the message left on Mrs. Higgins's windshield to Mr. Fisher. Mr. Fisher insists that the court could not reasonably have determined that he placed it there. It follows, his theory goes, that the convictions for menacing by stalking and telecommunications harassment would be based on the same conduct (i.e., Mr. Fisher's threatening telecommunications) and, therefore, should merge.

{¶23} We need not delve into the merger issue, however, because the evidence enabled the trial court to attribute the message to Mr. Fisher. Mrs. Higgins testified that she recognized Mr. Fisher's writing on the message, and the language of the note echoed his text messages on the same subject matter. And Mrs. Higgins discovered the message in the midst of Mr. Fisher's two-day outburst. On these facts, evidence sufficed for a rational trier of fact to find Mr. Fisher left the note on the car, thus obviating the merger issue. We therefore overrule Mr. Fisher's challenge to his menacing by stalking conviction.

B.

**{¶24}** The trial court also convicted Mr. Fisher of telecommunications harassment under R.C. 2917.21(B)(1), which provides "[n]o person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person."

**{¶25}** Mr. Fisher does not dispute the weight of the evidence here. He merely claims that the evidence fails to substantiate "purpose to abuse, threaten, or harass another person." We disagree. Mr. Fisher hurled over 70 pages of messages to Mrs. Higgins over the course of several days. Capturing the flavor of these messages, Mr. Fisher warned, "I'ma text you everyday * * *make your life a living hell from on out because I don't have s*** else to [lose]." When Mrs. Higgins accused him of "trying to cause paranoia" he embraced that: "yep that's my whole goal." Mrs. Higgins begged that he stop contacting her on multiple occasions, but the onslaught of messages persisted for two days. The combination of the substance and volume of these messages enabled a rational trier of fact to conclude beyond a reasonable doubt that Mr. Fisher acted with the requisite mental state, and we overrule Mr. Fisher's challenge to his conviction for telecommunications harassment.

C.

**{¶26}** Based on his threat to kill Judge Rucker, the trial court convicted Mr. Fisher of aggravated menacing under R.C. 2903.21, which reads "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person."

**{¶27}** Mr. Fisher takes issue with this by disputing whether a threat to a third party that is not communicated directly to that person can support a conviction for aggravated

10

menacing. In this regard, he features a Seventh District case where the court found that, under R.C. 2903.21, "appellant is not guilty of menacing because the alleged victim was neither the person to whom he addressed his statement nor a close relative of that person." *State v. Richard*, 129 Ohio App.3d 556, 561, 718 N.E.2d 508 (7th Dist.1998). The *Richard* court recognized, however, that the First District previously reached the opposite conclusion. *Id.* at 559-560, citing *State v. Roberts*, 1st Dist. Hamilton No. C-890639, 1990 WL 410625, *1-2 (Sept. 26, 1990) (affirming conviction for aggravated menacing when the defendant made a threatening statement concerning one officer, but not in their presence, that was later communicated to that officer). Since then, the Seventh District has seemingly backtracked on *Richard*. *See In re Cunningham*, 7th Dist. Harrison No. 02-537-CA, 2002-Ohio-5875, ¶ 23 (affirming conviction for aggravated menacing where the defendant "could well have intended for the victims to receive [the threat], albeit through an indirect method.").

{¶28} The Fifth, Ninth, and Eleventh Districts have all followed our general approach in *Roberts*. *State v. McWilliams*, 5th Dist. Stark No. 2011-CA-00051, 2012-Ohio-663, ¶ 27 ("[T]o sustain an aggravated menacing conviction, a threat to cause the harm need not be made directly to the intended victim, as we found in [a previous case], but may be sufficient if made to a third-party to whom the defendant knew or reasonably should have know[n] would convey the threat to the intended victim."); *State v. Knoble*, 9th Dist. Lorain No. 08CA009359, 2008-Ohio-5004, ¶ 13 ("We conclude that R.C. 2903.21 is clear and unambiguous on its face and does not impose a requirement that the threat of harm must be uttered directly to the intended victim."); *State v. Nixon*, 2014-Ohio-4303, 20 N.E.3d 404, ¶ 18 (11th Dist.) ("[E]ven though the threats were not made directly to [the target or his family], they were made under circumstances that placed [defendant] on reasonable notice

11

that his threats would probably reach [the target or his family] and cause these individuals to believe that appellant would cause them serious physical harm.").

**{¶29}** Based on our own precedent, and the cases from our sister districts, we reject Mr. Fisher's theory that the defendant must directly communicate the threat to the intended victim to sustain a conviction for aggravated menacing. To the contrary, Mr. Fisher must have made his statement "to a third-party to whom [Mr. Fisher] knew or reasonably should have know[n] would convey the threat to the intended victim." *See McWilliams* at ¶ 27.

**{¶30}** Here, the evidence established that Mr. Fisher should have known that the threat would be communicated to Judge Rucker. The text messages reveal that Mr. Fisher knew that Mrs. Higgins's mother used to work for Judge Rucker and that he believed that Judge Rucker had assisted her on the custody matter concerning their son. Viewing these facts in the light most favorable to the prosecution, a rational trier of fact could convict Mr. Fisher of aggravated menacing despite the fact that he did not communicate the threat directly to the victim. He expected that Mrs. Higgins would convey the threat, and in fact she did. We therefore overrule Mr. Fisher's challenge to his conviction for aggravated menacing.

D.

**{¶31}** The trial court convicted Mr. Fisher of carrying a concealed weapon under R.C. 2923.12(A)(2), which provides "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun * * * ."

**{¶32}** Mr. Fisher merely challenges the weight of the evidence here by raising credibility concerns related to the arresting officer's testimony. The arresting officer testified that he stopped Mr. Fisher after running his license plate, which revealed that the vehicle was registered to a female. On appeal, Mr. Fisher acknowledges that the vehicle was

registered to his mother, but speculates that the officer could not have linked him to his mother's registration information. Mr. Fisher asserts, without explanation, that these circumstances detract from the officer's credibility. But credibility determinations are generally questions for the trier of fact to resolve. *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21 ("[I]t is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve."). And we do not believe that this collateral credibility question weighs heavily against the integrity of the conviction. We therefore overrule Mr. Fisher's challenge to his conviction for carrying a concealed weapon.

V.

**{¶33}** Mr. Fisher's fourth assignment of error claims a deprivation of his right to effective assistance of counsel. " 'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' " *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002), quoting *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Furthermore, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland* at 694. Ohio courts must give " 'a heavy measure of deference to counsel's judgments' " and " 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id.*, quoting *Strickland* at 689, 691.

**{¶34}** Mr. Fisher complains about the denial of effective assistance of counsel because his lawyer did not argue that he had a valid concealed handgun license ("CHL"), a defense to the carrying a concealed weapon offense. Although Mr. Fisher testified that his

13

CHL was expired at the time of his arrest, the Ohio General Assembly passed 2020 Am.Sub.H.B. 197 ("H.B. 197") in March 2020, which provided a 90-day extension to renew one's CHL in light of the COVID-19 pandemic. Under section 11(E)(2) of the bill, if a CHL expired before its effective date, "[i]n such a case, the ninety-day extension period * * * shall be considered to have commenced on that date of scheduled expiration." On appeal, Mr. Fisher suggests that H.B. 197 extended the effectiveness of his CHL.

{¶35} Although Mr. Fisher may well be correct on this point, we see nothing in the record that validates his conclusion. Without proof of when his CHL expired, the record does not establish a reasonable probability that, if counsel had raised this theory, the result of the proceeding would have differed. Therefore, Mr. Fisher falls short on the prejudice prong of *Strickland*, and we accordingly overrule Mr. Fisher's fourth assignment of error based on the state of this record.

## VI.

{¶36} Mr. Fisher's fifth assignment of error asserts that the trial court erred by forfeiting his handgun without including a forfeiture specification in the complaint or the bill of particulars, as R.C. Chapter 2981 requires. The state concedes that the forfeiture of Mr. Fisher's firearm was improper, but notes that the firearm may have been destroyed pursuant to the trial court's order. We therefore sustain Mr. Fisher's fifth assignment of error, and order the trial court to return the firearm to Mr. Fisher if it has not been destroyed.

*     *     *

{¶37} For all of the foregoing reasons, we overrule Mr. Fisher's first, second, third, and fourth assignments of error. But we sustain Mr. Fisher's fifth assignment of error, and remand this cause for further proceedings consistent with this opinion.

14

Judgment accordingly.

**ZAYAS, P. J.,** and **WINKLER, J.,** concur.

Please note:

    The court has recorded its entry on the date of the release of this opinion