[Cite as *State v. Sipple*, 2021-Ohio-1319.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190462 |
| | | TRIAL NO. 19CRB-15290 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| LAWRENCE SIPPLE | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 16, 2021

*Andrew Garth,* Interim City Solicitor, *William T. Horsely*, Chief Prosecuting Attorney, and *Chris Brown,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Lawrence Sipple has appealed his conviction for attempted voyeurism in violation of R.C. 2907.08(D), arguing in two assignments of error that (1) the conviction was based upon insufficient evidence and against the manifest weight of the evidence, and (2) the trial court failed to properly impose the sex offender classification in its sentencing entry. For the following reasons, both assignments of error are overruled.

### *Factual Background*

{¶2} Melvina Chestnut was standing in line at an event held by the Lord's Gym, a charitable organization in Cincinnati, Ohio. Chestnut testified that Sipple, whom she described as an "acquaintance," came up behind her and whispered in her ear, "They said that you're free-ballin," which was explained by Chestnut to mean "not wearing any underwear." Chestnut testified that she was wearing shorts under her dress. She felt Sipple put his phone between her legs, under her dress. She looked down and saw his phone. She testified that the screen was "black" and she never heard it "snap," so she was unsure if he took a picture or not. After she caught him, Sipple laughed and nudged her and then walked away. Chestnut called the police, and Cincinnati Police Officer James Mathews responded to the scene.

{¶3} Mathews interviewed Sipple in his police cruiser. A portion of his body camera video was played at trial. In the video, Sipple admitted to placing his phone under Chestnut's dress, but denied taking any pictures or videos. He told Mathews that he was joking and clowning around with Chestnut, and that he knew that she always wore shorts under her dress anyway. Sipple offered to show Mathews his

phone, but Mathews declined. Mathews testified that he figured that any pictures would have been "long gone" by that point.

{¶4} Sipple was charged with voyeurism, but after a bench trial, he was convicted of attempted voyeurism in violation of R.C. 2907.08(D). The court held a sentencing hearing on August 2, 2019. The court informed Sipple that he would be classified as a Tier I sex offender, and reviewed his registration duties. In its sentencing entry, the court sentenced Sipple to 30 days in jail, a fine, and court costs, and ordered him to stay away from Lord's Gym and "register tier I."

### First Assignment of Error

{¶5} In his first assignment of error, Sipple contends that his conviction was based upon insufficient evidence and was against the manifest weight of the evidence.

{¶6} The test for determining whether the evidence was sufficient to sustain a conviction is if "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). It is a question of law for the court to determine, the court is not to weigh the evidence. *MacDonald* at ¶ 12. "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16.

{¶7} In reviewing a claim that a conviction is against the manifest weight of the evidence, "we review the record, weigh the evidence and all reasonable

inferences, consider the credibility of the witnesses, and determine whether the trier of fact, in resolving conflicts in the evidence, 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned.' " *Martin* 20 Ohio App.3d at 175, 485 N.E.2d 717. Reversal of a conviction and a grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.*

{¶8} To convict Sipple of attempted voyeurism, the state had to prove that he purposely or knowingly engaged in conduct that, if successful, would have resulted in secretly or surreptitiously videotaping, filming, photographing, or otherwise recording Chestnut under or through her clothing for the purpose of viewing her body or undergarments. *See* R.C. 2923.02(A) and 2907.08(D).

{¶9} Sipple argues that he did not act surreptitiously because Chestnut was aware of his presence, saw him pull out his phone and place it under her dress, and because immediately afterward he told his wife about the "joke" he had just played on Chestnut.

{¶10} Because "surreptitious" is not defined in R.C. 2907.08, we must look to other sources for a definition. "Surreptitious" is commonly defined as "unauthorized and clandestine; done by stealth and without legitimate authority." *State v. Latimore,* 12th Dist. Butler No. CA2015–09–175, 2016-Ohio-2989, ¶ 11, quoting *Black's Law Dictionary* (10th Ed.2014).

{¶11} Chestnut testified that she was not aware that Sipple had placed his phone under her dress until she felt it touch her legs, at which time she looked down and saw the phone. Chestnut did not authorize Sipple to place the phone under her dress. Based on this testimony, there was sufficient evidence for the court to find that

Sipple acted with stealth and without Chestnut's authority, and such a finding was not against the manifest weight of the evidence.

{¶12} Next, Sipple argues that the state failed to prove that he took a substantial step toward violating R.C. 2907.08(D).

{¶13} To prove an attempt, the state must prove that the offender purposely did or omitted to do something which is "a substantial step in a course of conduct planned to culminate in the commission of the crime." *MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, at ¶ 13, quoting *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 95. To count as a substantial step, the conduct must be "strongly corroborative of the actor's criminal purpose." *Id.*

{¶14} Sipple cites *Middletown v. Reuss*, 2016-Ohio-996, 48 N.E.3d 649 (12th Dist.), in support of his argument that his actions did not amount to a substantial step.

{¶15} In *Reuss,* the defendant was charged with violating R.C. 2907.08(D) for holding his phone over the partition at a tanning salon and attempting to record the victim in the next room. *Id.* at ¶ 2. The Twelfth District found that Reuss's conviction for attempted voyeurism was based on insufficient evidence because the victim was naked when Reuss held his phone over the partition, and therefore, Reuss could not have recorded her "under or through" her clothing, as specified by R.C. 2907.08(D). *Id.* at ¶ 11 (concluding that Reuss instead should have been charged with a violation of subsection R.C. 2907.08(A) or (B)).

{¶16} The court went on to hold that the trial court conflated "intent" with "attempt." *Id.* at ¶ 14. It pointed to a statement made by the trial court at sentencing: "I don't know if you took the picture or not but I think that was your intention to do

5

it." *Id.* at ¶ 16. The Twelfth District concluded, "By its own admission, the court was unable to discern whether Reuss actually perpetrated an attempt. Rather, the court rested its finding of guilt upon its belief that Reuss intended to photograph [the victim]," and "one may not be convicted on intent alone." *Id.* at ¶ 16-17. The court suggested that there was no evidence of an attempt because "[t]he phone bore no indication regarding whether it was actively photographing or recording her," "[p]olice were unable to recover any photographs or video recordings from the phone seized," and "Ruess never admitted to making a video recording or taking a photograph of [the victim]." *Id.* at ¶ 18.

{¶17} We believe the Twelfth District's holding regarding attempt to be dicta, and we respectfully disagree with its suggestion that the facts in that case did not amount to an attempt. It is certainly true that "intent to commit a crime does not of itself constitute an attempt, nor does mere preparation." *State v. Woods*, 48 Ohio St.2d 127, 131, 357 N.E.2d 1059 (1976). Instead, the " 'substantial step' standard" focuses on the defendant's overt acts that "convincingly demonstrate a firm purpose to commit a crime." *State v. Amos*, 1st Dist. Hamilton No. C-150265, 2016-Ohio-1319, ¶ 34, quoting *Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, at ¶ 102, quoting *Woods* at 132. But, the state is not required to prove that the defendant actually captured a photograph or video of the victim in order to convict him of attempted voyeurism.

{¶18} Sipple cannot point to any statements made by the trial court that might cause us to believe that it conflated intent with attempt. Rather, there was strong evidence that Sipple committed an overt act demonstrating a purpose to

commit voyeurism by putting his phone under Chestnut's dress and between her legs.

{¶19} Moreover, "[t]he conduct necessary for a criminal attempt need not be the last proximate act prior to the consummation of the felony." *Woods,* 48 Ohio St.2d at 131, 357 N.E.2d 1059. "[The] act of climbing onto the store roof with a gun, apparently to lie in wait for the store manager, was plainly a substantial step in the planned robbery, and certainly was strongly corroborative of the criminal purpose." *Id.* at 132. Therefore, the state is not required to prove, as the Twelfth District in *Reuss* suggested, that an offender actually took a photograph in order to be convicted of attempted voyeurism. In fact, requiring such proof would require proof of the offense of voyeurism itself and defeat the very purpose of the attempt statute.

{¶20} Sipple makes the additional argument that the evidence was insufficient because there was no testimony about the type of phone and whether it had recording or photographing capability. However, Mathews's body camera video reveals that Sipple offered to show Mathews his phone. He stated, "Get my phone and I can show you every picture in that phone." Taking this evidence in the light most favorable to the state, we can conclude that Sipple's phone had the ability to record videos or take photographs.

{¶21} The dissent concludes that the mere act of placing his cell phone underneath Chestnut's dress does not demonstrate Sipple's firm purpose to actually photograph or videotape Chestnut underneath her dress because the phone was "not in photograph or video mode." There are several problems with this conclusion. First, the dissent assumes that because the screen was black when Chestnut saw it, the phone was not capable of taking a photograph or video. However, it is common

7

knowledge that a phone can easily be placed in photograph or video mode with the touch of a button. Second, it is possible that Sipple's phone could have taken a photograph or video even if the screen were black.[1] Third, and most importantly, Chestnut testified that the phone was placed underneath her dress and she did not know it was there until she felt it between her legs. Chestnut, of course, could not testify to what mode the phone was in when it was underneath her dress and between her legs.

{¶22} The dissent compares Sipple's cell phone to the knife in *State v. Smith*, 9th Dist. Lorain No. 98CA007168, 2000 WL 110411 (Jan. 26, 2000). In *Smith*, the majority of the court found there was insufficient evidence of felonious assault because "Smith was not holding the knife in a manner that would permit him to carry out his stated intentions; he was flailing it around." *Id.* at *3. Importantly, the court noted that "Smith never lunged at [the victim] or took any action beyond a continuation of [his] verbal tirade * * *." *Id.* But unlike the knife in *Smith*, Sipple *did* hold his cell phone in a manner that would permit him to carry out his stated intentions.

{¶23} By stating, "They said that you're free-ballin," and then putting his phone under Chestnut's dress, Sipple took a substantial step toward committing the offense of voyeurism. Such an action was "strongly corroborative" of his intention to photograph her body or undergarments. The first assignment of error is overruled.

---

[1] There are actually smart phone applications that allow people to take photos or videos without any camera display on the screen. *See* Abhishek Bhatnagar, *Top 5 Apps to Activate Camera for Hidden, Secret Pictures on Android Devices*, https://gadgetstouse.com/blog/2014/05/18/top-5-apps-to-spy (accessed April 8, 2021).

## Second Assignment of Error

{¶24} In his second assignment of error, Sipple contends that the trial court failed to properly impose the sex offender classification in its sentencing entry, and that because he has completed his sentence, the classification is void and must be vacated. Specifically, Sipple argues that even though the trial court properly stated "register tier I" in the sentencing entry, it failed to include a summary and the duration of Sipple's Tier I registration duties in the sentencing entry, as is required by R.C. 2929.23(B), rendering his sex offender classification void.

{¶25} R.C. 2929.23 delineates the requirements a trial court must follow when imposing a sex offender classification for a misdemeanor.

> If an offender is being sentenced for a sexually oriented offense * * * that is a misdemeanor * * *, the judge shall include *in the sentence* a summary of the offender's duties imposed under sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and the duration of the duties. The judge shall inform the offender, *at the time of sentencing*, of those duties and of their duration. If required under division (A)(2) of section 2950.03 of the Revised Code, the judge shall perform the duties specified in that section or, if required under division (A)(6) of section 2950.03 of the Revised Code, the judge shall perform the duties specified in that division.

(Emphasis added.) R.C. 2929.23(B).

{¶26} "This court has held repeatedly that any Tier classification under Ohio's version of the Adam Walsh Act is a criminal sanction that is part of the sentence and must be set forth in the sentencing entry in order to be effective." *State v. Emanuel*, 1st Dist. Hamilton No. C-190450, 2021-Ohio-448, ¶ 5. However, this

court has not spoken definitively on the issue of whether the sentencing entry must also include a summary of the offender's registration duties and their duration in order for an offender to be properly classified as a sex offender.

{¶27} Sipple concedes that the trial court properly informed him of his registration duties and their duration at the *sentencing hearing*. He argues that the trial court's failure to include a summary of his registration duties and their duration in the *sentencing entry* renders his sex offender classification void.[2]

{¶28} As an initial matter, we must determine the meaning of R.C. 2929.23(B)'s summary requirement. To determine what the General Assembly intended by "in the sentence" we analyze how "sentence" is defined and how "in the sentence" has been interpreted in other code sections concerning sex offender classifications and registration requirements.

{¶29} R.C. 2929.01(E)(E) defines "sentence" as "the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense." In order for a sanction to commence, it must be imposed by the court. A sanction is imposed by the sentencing entry, not by what is said during the sentencing hearing. *State v. Halsey*, 2016-Ohio-7990, 74 N.E.3d 915, ¶ 26 (12th Dist.), citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29 ("a court speaks though its journal"); *see Kaine v. Marion Prison Warden*, 88 Ohio St.3d 454, 455, 727 N.E.2d 907 (2000) ("Crim.R. 32(C) expressly

---

[2] We note that while prior precedent held that errors in the classification portion of the sentence rendered the classification void, pursuant to the Ohio Supreme Court's decisions in *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, and *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, any sentencing errors by the trial court would render that part of the sentence voidable, not void. *See Emanuel*, 1st Dist. Hamilton No. C-190450, 2021-Ohio-448, at ¶ 10.

provides that a judgment in a criminal case 'is effective only when entered on the journal by the clerk.' ").

{¶30} R.C. 2929.19(B)(3)(a) states that "the court shall include *in the offender's sentence* a statement that the offender is a tier III sex offender/child-victim offender." (Emphasis added.) "Several Ohio appellate districts have held that R.C. 2929.19(B)(3) requires inclusion of a Tier III sex offender classification in a sentencing entry and that its omission renders the sentence deficient." *Halsey*, 2016-Ohio-7990, 74 N.E.3d 915, at ¶ 13 (citing cases from the Eighth, Seventh, and Fourth Districts); s*ee State v. Merritt*, 1st Dist. Hamilton No. C-170649, 2018-Ohio-4995, ¶ 7 (following *Halsey* and holding that "[b]ecause [the defendant's] Tier III classification was not included in the judgment of conviction and sentence, he is not subject to community notification or residency requirements").

{¶31} Even though there is no statutory language requiring Tier I and Tier II sex offender classifications to be included "in the sentence," this court has held that any "Tier classification under the [Adam Walsh Act ("AWA")] is a type of sanction that may be imposed for an offense" and therefore, must be included "in the entry of conviction and sentence." *State v. Hildebrand*, 1st Dist. Hamilton No. C-150046, 2018-Ohio-2962, ¶ 6, 10, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108 (holding that the registration and verification requirements of the AWA are punitive).

{¶32} Thus, all sex offender tier classifications under the AWA are part of the sanction and must be included in the sentencing entry.

{¶33} Tier classifications under the AWA are automatic and are "based solely on the offense [the offender] committed, without regard to the circumstances of the

11

crime or [the offender's] likelihood to reoffend." *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, at ¶ 17, citing R.C. 2950.01(E), (F) and (G). "[R]egistration requirements and other requirements are based solely on the fact of conviction." *Williams* at ¶ 20.

{¶34} Judges not only have zero discretion with regard to the tier classification, they also have zero discretion with regard to an offender's duties or the duration he or she must register. The duties are set forth by statute. *See, e.g.*, R.C. 2950.034 (prohibiting offender from establishing residence near school); R.C. 2950.04 (duty to register); R.C. 2950.041 (personal verification with sheriff); R.C. 2950.05 (notice of residence address change). The duration of these duties is also set forth by statute and varies by tier. *See* R.C. 2950.06 and 2950.07 (Tier I = register annually for 15 years, Tier II = register every 180 days for 25 years, Tier III = register every 90 days for life). Thus, a tier classification makes clear the length of time an offender must register and his or her registration duties.

{¶35} By virtue of placing the tier classification in the sentencing entry, the sentencing court is, in effect, "includ[ing] in the sentence a summary of the offender's duties imposed under sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and the duration of the duties" as required by R.C. 2929.23(B). To require a court to do more than this would put form over substance and would make the sentencing entry longer and more confusing than necessary. It would also potentially allow sex offenders to avoid registering due to a technicality.

{¶36} In addition to placing the tier classification in the sentencing entry, the court is required to not only inform the offender of his or her duties and their

duration at the sentencing hearing (R.C. 2929.23(B)), but also provide the offender with a form that explains those duties and their duration (R.C. 2950.03).

{¶37} Sipple acknowledges receiving, understanding, and signing the sex offender notification form at the sentencing hearing. Sipple also agrees that the trial court properly informed him of his registration duties and their duration at the sentencing hearing.

{¶38} Thus, not only was Sipple properly notified of his registration duties and their duration, he was properly sentenced because the appropriate tier classification was included in the sentencing entry. We find the trial court did everything it needed to do under the AWA in order to properly classify Sipple as a sex offender. *See, e.g., State v. Fowler*, 10th Dist. Franklin No. 09AP-622, 2010-Ohio-747, ¶ 5 (holding that the requirements of R.C. 2929.13(I), the felony equivalent of R.C. 2929.23(B), were satisfied where the court informed the offender of his tier classification and verified that the offender received a form detailing his registration duties, reviewed it with counsel, and acknowledged that he understood the requirements).

{¶39} Sipple's second assignment of error is overruled.

### *Conclusion*

{¶40} The first and second assignments of error are overruled and the trial court's judgment is affirmed.

Judgment affirmed.

**MYERS, J.,** concurs.
**ZAYAS, P.J.,** dissents.

**ZAYAS, P.J.**, dissenting.

{¶41} I must respectfully dissent from the majority's opinion. I would hold that Sipple did not take a substantial step toward commission of the offense of voyeurism under R.C. 2907.08(D) and would therefore reverse his conviction.

**Factual and Procedural Background**

{¶42} After a bench trial, Lawrence Sipple was convicted of attempted voyeurism in violation of R.C. 2907.08(D). The conviction was based on an incident that occurred between Sipple and Melvina Chestnut.

{¶43} Sipple and Chestnut both attended a community event for a local gym. Chestnut wore a dress to the event with shorts underneath. While she was waiting in line to get food for her son, Sipple came up behind her and whispered in her ear, "They said that you're free-balling." He continued to whisper this in her ear while she tried to block him out. When asked what happened next, Chestnut testified as follows:

Chestnut:    That's when I seen him pull out his phone and he had put it in between my legs, is I [sic] how I felt his phone right there. And then he --

Prosecutor:  How did you become aware his phone was between your legs?

Chestnut:    When I felt it in between my legs and I looked down and he had his phone out like he was trying to take a picture.

Prosecutor:  Okay. So underneath your dress?

Chestnut:    Yes.

Prosecutor: Okay. Where -- are you -- are you aware if he was able to actually take a picture or anything like that?

Chestnut: No.

Prosecutor: Okay. So you feel his phone underneath you. What happens next?

Chestnut: That's when he kept on laughing and he -- like, he nudged me; like, he nudged me and was laughing or whatever. And then he -- then he walked over to his wife and was telling his wife what happened, because I was upset and I walked away.

{¶44} On cross-examination, counsel for Sipple asked Chestnut if the phone screen was still black when Sipple put it under her dress and she replied, "As I seen the phone go under there, it was black." She also testified that she did not see or hear him take a picture.

{¶45} Footage from a body worn camera of the responding officer was played in court that showed the officer's conversation with Sipple after his arrest. Simple admitted telling Chestnut that he heard she was "free balling," but denied ever putting his phone under her dress or physically touching her. Sipple claimed that he was "clowning around" and only "acted like I was going to do something." He stated, "I had [the phone] in my hand and I just lowered my arm down because I had got a text from a friend and I had just got to reading it and I just dropped my arm and act like that I was do something [sic]." He also claimed that he knew at the time that she was wearing shorts under her dress because she always wore shorts under her dress. The officer asked Sipple if it was possible that Chestnut interpreted his actions as

15

him putting the phone "down by her crotch to take a photo of her underwear" and he admitted that it was. He told the officer, "get my phone and I can show you every picture in that phone." The officer testified that he never attempted to look at Sipple's phone.

**Law and Analysis**

{¶46} R.C. 2923.02 provides that, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶47} The 1973 Legislative Service Commission Notes to R.C. 2923.02 direct that:

> Under this section, an attempt must be purposely or knowingly committed. If the offense attempted specifies that purpose is the culpable mental state required for its commission, then the attempt must be purposeful.

{¶48} R.C. 2923.02 was construed by the Ohio Supreme Court in *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), *judgment vacated on other grounds*, 438 U.S. 910, 98 S.Ct. 3133, 57 L.Ed.2d 1153 (1978). *Woods* concerned two defendants, Roland Reaves and Ricardo Woods, who were convicted of aggravated murder for purposely causing the death of a police officer while fleeing immediately after attempting to commit aggravated robbery. *Id.* at 129. The evidence was essentially undisputed, *id.*, and Woods made a complete statement about his part in the events. *Id.* at 128.

**{¶49}** The evidence established that Woods and Reaves met for the first time about two weeks prior to the day in question. *Id.* at 128. Woods was living with Reaves's sister and was recently laid off from his job. *Id.* Woods and Reaves agreed they needed money and used Woods's unemployment check to purchase a .38-caliber revolver. *Id.* Reaves told the seller he planned to use the gun to rob a loan company. *Id.* Later that night, around midnight, Reaves and Woods parked close to a United Dairy Farmers store and began to "case" the store. *Id.* They could see the manager inside and planned to wait until the manager came out to "hold him up and take the money." *Id.* at 128-129. Reaves had the revolver they purchased, and Woods had a .22-caliber pistol that belonged to Reaves. *Id.* at 129. Reaves then left Woods across the street to be a lookout and climbed onto the roof of the store. *Id.* Reaves got down from the roof and came back to join Woods and said something looked funny. *Id.* They had apparently heard sirens of the fire department nearby. *Id.* They then walked away from the store and down the street. *Id.* As they were walking down the street, a police officer approached them, and Reaves shot the officer several times. *Id.* Woods also shot at the officer, while the officer was lying on the street, as they were fleeing the scene. *Id.*

**{¶50}** Among other things, Woods challenged the sufficiency of the evidence to prove attempted robbery. *Id.* at 130. When interpreting R.C. 2923.02, the court stated:

> The committee comment for this section states, in part, that: 'In order to prove an attempt to commit an offense, it must be shown that particular conduct directed toward commission of the offense took place and that such conduct, if successful, would constitute or result in

the offense. * * *' This language establishes that the essential elements of a criminal attempt are the mens rea of purpose or knowledge, and conduct directed toward the commission of an offense. The statute does not, however, indicate how far this conduct must proceed toward the actual consummation of the crime in order to be considered an attempt to commit that crime. There is also little case law in Ohio on this question, although this court has held that the conduct necessary for a criminal attempt 'need not be the last proximate act prior to the consummation of the felony.' *State v. Farmer* (1951), 156 Ohio St. 214, 216, 102 N.E.2d 11, 13, *Fox v. State*, (1878), 34 Ohio St. 377.

* * *

American courts have generally agreed that intent to commit a crime does not of itself constitute an attempt, nor does mere preparation. The difficulty is to formulate a standard that excludes preparations prior to an actual attempt to commit a crime, while including, as punishable, those acts which are so dangerously close to resulting in a crime that intervention and arrest by the police are justified, even before the 'last proximate act.' Various tests have been suggested and followed in other jurisdictions.

* * *

Ohio's statutory definitions of criminal offenses in the Revised Code are based largely upon the American Law Institute's Model Penal Code, and the standard adopted in the latter code appears to us workable, reasonable, and consistent with the language of R.C.

18

2923.02(A).  Under Section 5.01 of the Model Penal Code, an attempt is when one 'purposely does or omits to do anything which is * * * an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.'  To constitute a 'substantial step,' the conduct must be 'strongly corroborative of the actor's criminal purpose.'  *The application of this standard will of course depend upon both the nature of the intended crime and the facts of the particular case.  A substantial step in the commission of a robbery may be quite different from that in arson, rape, or some other crime.  But this standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent.*

(Emphasis added.)  *Woods*, 48 Ohio St.2d at 131-132, 357 N.E.2d 1059.

{¶51}  The court found that "Reaves' act of climbing onto the store roof with a gun, apparently lying in wait for the store manager, was plainly a substantial step in the planned robbery, and certainly was strongly corroborative of the criminal purpose." *Id.* at 132.  Thus, the court held that the trial court did not err in holding that the conduct could constitute an attempted robbery.  *Id.*

{¶52}  The Ohio Supreme Court again construed R.C. 2923.02 in *State v. Brooks*, 44 Ohio St.3d 185, 191, 542 N.E.2d 636 (1989). In *Brooks*, the court addressed a certified question from the Ninth District, asking whether the mere

pointing of a deadly weapon, without more, is sufficient evidence of the offense of felonious assault in violation of R.C. 2903.11.[3] *Id.* at 187.

**{¶53}** Expanding on the court's interpretation of R.C. 2923.02 in *Woods*, the court looked to comment 6(a) of Section 5.01 of the Model Penal Code for further guidance on the requirements of a substantial step. *Id.* at 191. The court stated:

Comment 6(a) to Section 5.01 of the Model Penal Code explains the requirements of "substantial step" and corroboration of the actor's criminal purpose:

"(a) *Requirements of 'Substantial Step' and Corroboration of Purpose.* Whether a particular act is a substantial step is obviously a matter of degree. To this extent, the Code retains the element of imprecision found in most of the other approaches to the preparation-attempt problem. There are, however, several differences to be noted:

"*First, this formulation shifts the emphasis from what remains to be done, the chief concern of the proximity tests, to what the actor has already done.* That further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial. It is expected, in the normal case, that this approach will broaden the scope of attempt liability."

(Emphasis sic.) *Id.* at 191.

**{¶54}** The court ultimately held that "that act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined R.C.

---

[3] In relevant part, R.C. 2903.11 provides, "No person shall knowingly * * * cause or *attempt* to cause physical harm to another by means of a deadly weapon * * *." (Emphasis added.)

2903.11(A)(2)." *Id.* at 192. In a concurring opinion, Chief Justice Moyer wrote to emphasize the importance of the conditional language "that suggests that additional evidence regarding the actor's intention may enable a jury to find that the act of pointing a deadly weapon at another is a felonious assault." *Id.* at 196 (Moyer, C.J., concurring). Chief Justice Moyer listed two examples of circumstances where evidence of a defendant's other conduct could be used to show that the defendant took a substantial step toward causing harm, despite doing nothing more than pointing a deadly weapon at another: (1) "the defendant has fired a deadly weapon at the same person on more than one occasion in the past and is now being tried for felonious assault for having pointed a deadly weapon at the same person, with evidence of no other conduct"; and (2) "the defendant is charged with felonious assault for having pointed a deadly weapon at another person, with evidence of no other conduct except that defendant fired a deadly weapon at one or more people on the same day as the incident in question." *Id.*

{¶55} Chief Justice Moyer's concurrence demonstrates how the analysis of a substantial step is different where there is evidence of a plan, scheme or some common occurrence that corroborates a defendant's criminal purpose. *See id.* In these situations, a substantial step may be found closer to the preparation stage than normally would be sufficient because there is additional evidence which corroborates a defendant's purpose. *See id.* Alternatively, where incidents happen spontaneously and there is no evidence of a plan, scheme or some common occurrence, steps closer to the completion of the crime are required before an overt act can be found which convincingly demonstrates a firm purpose to commit a crime. *See id.*

{¶56} In cases where the defendant has used some sort of device or instrumentality, the nature of the device is an important consideration in the substantial-step analysis.

{¶57} For example, in *Smith*, the Ninth District recognized that the analysis is different when looking at what constitutes a substantial step when pointing a knife at someone and what constitutes a substantial step when pointing a gun at someone. *State v. Smith*, 9th Dist. Lorain No. 98CA007168, 2000 WL 110411, *3 (Jan. 26, 2000). In *Smith*, George Smith ("George") noticed two individuals in an oral altercation. *Id* at *1. One of the individuals was a friend of George's and the other was a former roommate, Michael Smith ("Smith"), the defendant. *Id.* In hopes of settling the dispute, George approached the pair and tried to intervene. *Id.* It was then he noticed that Smith was holding a swiss army knife with an open blade. *Id.* Smith waved the knife around and told George, "I'm going to cut you. I'm going to get you." *Id.* Smith walked toward George still waving the knife and shouting vulgarities. *Id.* George pointed out to Smith that the police were present, and Smith stopped approaching. *Id.* Smith eventually fled on foot and dropped the knife. *Id.* One of the officers who observed some of the altercation testified that Smith walked toward George waving and flailing the knife from about 15 feet to a distance of about three feet. *Id.* George testified that Smith was waving the knife back and forth, but never tried to lunge at George with the knife. *Id.* at *3. Smith was convicted by a jury of felonious assault against George in violation of R.C. 2903.11(A)(2), which prohibits an individual from attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. *Id.* at *1-2.

{¶58} In its analysis, the *Smith* court first recognized that the Ohio Supreme Court has determined that the act of pointing a loaded gun at an individual while threatening to use it was sufficient to establish that a defendant knowing attempted to cause physical harm. *Id.*, citing *Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636, and *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991). The court then distinguished a knife from a gun, stating:

> Pointing a knife at an individual is different from pointing a gun, even though both are deadly weapons. Pointing a knife at someone is generally only one of several steps preparatory to using it to injure another, rather than the penultimate one. That act alone, or even when accompanied by verbal threats, is equivocal as to whether the assailant was trying to harm the victim, or merely intending to frighten him, one of the primary distinctions between felonious assault, R.C. 2903.11(A)(2), and aggravated menacing, R.C. 2903.21(A).

(Citation omitted.) *Smith* at *3.

{¶59} The court went on to find that Smith "was not holding the knife in a manner that would permit him to carry out his stated intentions," and Smith "never lunged at George or took any action beyond a continuation of the verbal tirade that had originally been directed at George's friend." Accordingly, the court held, "there was insufficient evidence of an overt act that went beyond mere preparation and was strongly corroborative of Smith's intent to actually harm George." *Id.* at *4. Therefore, the court found the evidence insufficient to convince a rational trier of fact beyond a reasonable doubt that Smith attempted to cause physical harm to George. *Id.* at *3.

23

{¶60} The analysis of a substantial step must be fact intensive and must look to the nature of the crime and the facts of the particular case to determine if the steps taken by a defendant convincingly demonstrate a firm purpose to commit the crime for which he is charged. *See, e.g., State v. Davis*, 76 Ohio St.3d 107, 666 N.E.2d 1099 (1996) (Finding the evidence insufficient to show attempted rape where the evidence showed the victim was shot by the defendant in a car, the victim was trying to push the defendant away "as if 'she didn't want to do something' " right before she was shot, the victim was nude when the defendant dumped her body from the car, and the forensic evidence showed there were possible finger marks on the victim's thigh); *State v. Mincy*, 1st Dist. Hamilton No. C-060041, 2007-Ohio-1316 (Finding the evidence insufficient to show an attempt to cause harm to a bus driver where the evidence showed that two men entered the bus, one man had a gun and pointed the gun at the bus driver, brandished the gun while walking down the aisle of the bus, paced back and forth in the bus while crying and yelling, exited from the bus, and then pointed the gun at the bus); *State v. Peyatt*, 2019-Ohio-3585, 142 N.E.3d 11190 (7th Dist.) (Finding the evidence insufficient to show attempted gross sexual imposition where the evidence showed the defendant told the victim to "look" and then exposed his penis to her, but did not show any further advances toward sexual contact with the victim such as trying to make the victim touch his penis or asking her to touch his penis); *State v. Clyde*, 6th Dist. Erie No. E-14-006, 2015-Ohio-1859 (Finding the evidence insufficient to show attempted pandering obscenity where the evidence showed the defendant entered the bedroom of a 14-year-old girl and offered to pay the girl and her boyfriend if they made a "porno" for him, but did not show that the defendant actually had the money he offered to them, that anyone

"disrobed," or that any plans were arranged or further discussed); *State v. Brown*, 9th Dist. Lorain No. 18CA011310, 2019-Ohio-2599 (Finding the evidence insufficient to show attempted sexual battery or attempted child endangering, despite the behavior being "despicable and depraved," where the evidence showed the victim's father talked to her about "sex lessons" when they were alone together, repeatedly expressed his desire to teach her how to engage in both oral sex and vaginal intercourse, and told the victim, after she was grounded for spending the night somewhere else without telling the defendant, that she would remain grounded until she complied with sex lessons, but did not show any significant conduct to pair with his statements of intent, such as ordering her to remove her clothing); *Compare State v. Gann*, 154 Ohio App.3d 170, 2003-Ohio-4000, 796 N.E.2d 942 (12th Dist.) (Finding the evidence sufficient to show an attempt to engage in unlawful sexual conduct with a minor where the evidence showed the defendant communicated with a 14-year-old girl over the internet, arranged to meet the girl at a movie theater and told the girl he wanted to sit in the back row with her, have oral sex with her, "finger" her, and feel her "boobs.").

{¶61} In this case, Sipple was found guilty of attempted voyeurism in violation of R.C. 2907.08(D), which provides that: "No person shall secretly or surreptitiously videotape, film, photograph, or otherwise record another person under or through the clothing being worn by that other person for the purpose of viewing the body of, or the undergarments worn by, that other person."

{¶62} I agree with the majority that the state is not required to prove that a defendant actually captured a photograph or video of the victim in order to convict a

defendant of attempted voyeurism in violation of R.C. 2907.08(D); however, I disagree with the majority that the Twelfth District suggested such in *Reuss*.

{¶63} In *Reuss*, K.B. was tanning at a tanning salon, wearing only panties, when she exited from the bed to place her cell phone on the table. *Middletown v. Reuss*, 2016-Ohio-996, 48 N.E.3d 649, ¶ 2 (12th Dist.). She glanced up and saw an Apple iPhone being held over the partition wall, with the camera lens pointed in her direction. *Id.* She covered herself up and yelled, banging on the partition. *Id.* at ¶ 3. The phone disappeared behind the wall. *Id.* K.B. leaned out of her room and banged on the wall of the adjoining room. *Id.* Defendant David Ruess opened the door, claimed he did not do anything wrong, and then quickly left the salon. *Id.* Ruess was convicted by the trial court of attempted voyeurism in violation of a city ordinance that mirrors R.C. 2907.08(D). *Id.* at ¶ 9.

{¶64} Ruess challenged his conviction based on the sufficiency of the evidence, raising two issues for review. *Id.* at ¶ 7. First, Ruess argued that it was physically impossible for him to violate the statute because K.B. was undressed so there was no clothing for him to attempt to photograph or record under or through. *Id.* at ¶ 9. Based on the plain language of the statute, the court agreed with him, finding the distinguishing feature of subsection (D) to be the recording or photographing under or through clothing being worn by the victim. *Id.*

{¶65} Reuss's second argument, the relevant argument for our purposes here, attacked the sufficiency of the evidence, arguing that the trial court's statements show that the trial court conflated the concepts of intent and attempt in rendering the guilty verdict. *Id.* at ¶ 14. Prior to imposing the sentence, the trial court stated, "I don't know if you took the picture or not but I think that was your

intention to do it." *Id.* at ¶ 16. The Twelfth District agreed this statement showed that the court erroneously rested its guilty finding on Ruess's intent to violate the voyeurism statute. *Id.* at ¶ 18. The court went on to find the evidence insufficient to convince the average mind beyond a reasonable doubt that Ruess attempted to videotape or photograph K.B. because (1) K.B. could not tell whether Ruess's phone was operating when she glanced up from her tanning booth, (2) the phone bore no indication regarding whether it was actively photographing or recording her, (3) police were unable to recover any photographs or video recordings from the seized phone, and (4) Ruess never admitted to making a video recording or taking a photograph of K.B. *Id.* at ¶ 17-18.

{¶66} The majority suggests this holding shows the Twelfth District would require the defendant to actually capture a photograph or video before convicting him of attempted voyeurism. I disagree. Under the Ohio Supreme Court's guidance, to find a substantial step, we must look to overt acts already completed by the defendant which convincingly demonstrate a firm purpose to commit the offense. The focus is not on the acts which remain to be done for completion of the offense, but the steps already taken. By relying on the lack of evidence, the Twelfth District explained the lack of a step taken which would convincingly demonstrate a firm purpose to photograph or videotape K.B. It did not conclude that actually taking a photograph or video was necessary for the conviction. Rather, the court concluded that the evidence presented did not show that Ruess took any steps beyond holding the phone over the partition wall, which was insufficient to demonstrate that Ruess had a firm purpose to commit voyeurism in violation of R.C. 2907.08(D).

{¶67} The same issue exists with the evidence presented in this case. Viewing the evidence in a light most favorable to the prosecution, the evidence shows Sipple approached Chestnut in line, made a comment to her about hearing she was not wearing anything under her dress, and then placed an inactive device under her dress. The device screen was black when Chestnut saw it under her dress. It was not in photograph or record mode. Additionally, Chestnut testified that she had shorts on under her dress and Sipple told the responding officer that he knew she was wearing shorts under her dress. The evidence does not show a step taken by Sipple which convincingly demonstrates a firm purpose to actually photograph or videotape Chestnut under her dress.

{¶68} The majority would find the mere ability of the device to take a photo or video sufficient for this finding, even though the device was not actively in that mode at the time. They take Sipple's statement, "Get my phone and I can show you every picture in that phone" and, in putting it in the light most favorable to the state, infer that this establishes that the device had the ability to record videos or take photographs. Even assuming that the record established that Sipple's phone had the functional capability to record videos or take photographs, the evidence would still be insufficient as the phone screen was black. The precedent is clear that operability is not solely determinative; there must also be evidence of an overt act taken by the defendant which shows a purpose to use the device in a manner sufficient for commission of the crime alleged. *See, e.g., Smith*, 9th Dist. Lorain No. 98CA007168, 2000 WL 110411, and *Reuss*, 2016-Ohio-996, 48 N.E.3d 649.

{¶69} The majority asserts that a phone can easily be placed in photograph or video mode with the touch of a button and that the phone could have taken a

photograph or video even if the screen were black. There is nothing in the record to establish this. An appellate court's role is to determine an appeal based on the record before it. *See* App.R. 12. We may not consider facts extraneous to the record. *Paulin v. Midland Mut. Life Ins. Co.*, 37 Ohio St.2d 109, 112, 307 N.E.2d 908 (1974); *D'Amico v. D'Amico*, 7th Dist. Mahoning No. 00-CA-46, 2001-Ohio-3438, *3.

{¶70} The record is devoid of evidence on the "common knowledge" that phones in black screen can easily be placed in photograph or record mode with the touch of a button. Moreover, there is no evidence of the type of phone Sipple was using or the capabilities of the phone.[4] There is also no evidence of any shortcut buttons on his phone to place the phone in camera mode or of any secret applications installed to take hidden photographs.

{¶71} Unlike the majority's assertion that the mode of the device while under Chestnut's dress is unknown, Chestnut testified that she saw the phone as it was going under her dress and that the phone screen was black. She testified as follows:

Counsel:     -- So you said that when you came into contact with Mr.
             Sipple, he approached you in the line for the food; is that
             right?

Chestnut:    Yes.

Counsel:     Okay. And he said to you, they said that you're free-
             balling?

Chestnut:    Yes.

---

[4] This can be contrasted with the evidence in *Reuss* where there was testimony that the phone used was an iPhone.

Counsel:     Okay.  And that's something that you know to mean you're walking around without any underwear, basically, right?

Chestnut:    Yes.

Counsel:     And put it under your dress?

Chestnut:    (Nodding head.)

Counsel:     Okay.  And you were able to see him somewhat as he put the phone under the dress, right?

Chestnut:    Yes.

Counsel:     Okay.  And you had told the police officer, when you spoke with the officer, that the phone was still black when he put it under your dress?

Chestnut:    Yes, it was.

Counsel:     Okay.  And that's --

Chestnut:    As when I seen it going under there, it was black.

Court:       I'm sorry.  Can you say that again? I couldn't hear you.

Chestnut:    As I seen the phone go under there, it was black.  So yeah.

Counsel:     Okay.  And that's one of the reasons why you said you knew that he didn't actually take a picture, right?

Chestnut:    Yeah.  I didn't see him take a picture.

Counsel:     Because you said that the phone was black as he put it under your dress?

Chestnut:    Yes.

Counsel:     And you never heard it snap or take a picture or anything like that, right?

Chestnut:   No.

Counsel:     Okay. And you said that you had shorts on under your dress?

Chestnut:   Yes.

Counsel:     Okay. And you said that Mr. Sipple was kind of laughing and then he went and talked to his wife about it?

Chestnut:   Uh-huh.

**{¶72}** Without more, the evidence does not show an overt act taken by Sipple which convincingly demonstrates a firm purpose to photograph Chestnut under her dress. Limiting my analysis to the facts in the record and focusing on the steps actually taken by Sipple, I would find the evidence insufficient in this case to convince a rational trier of fact beyond a reasonable doubt that Sipple took a substantial step toward violation of R.C. 2907.08(D). I would reverse the trial court's judgment on the first assignment of error, rendering the second assignment of error moot.

## Conclusion

**{¶73}** Accordingly, I would sustain the first assignment of error, and reverse the judgment of the trial court.

Please note:

The court has recorded its own entry on the date of the release of this opinion.