[Cite as *State v. Nash*, 2022-Ohio-1516.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210435 |
| | | C-210436 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-20CRB-7503 A-B |
| vs. | : | |
| | : | *O P I N I O N.* |
| JORDAN NASH, | | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: May 6, 2022

*Joseph T. Deters,* Hamilton County Prosecutor, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista M. Gieske*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}  In the aftermath of a domestic dispute, defendant-appellant Jordan Nash was convicted of domestic violence and menacing.  On appeal, he maintains that his convictions ran against the weight of the evidence and alleges deprivation of his right to effective assistance of counsel.  But the record provides no basis for reversal, and we accordingly overrule his assignments of error and affirm the judgments of the trial court.

I.

{¶2}  This case stems from a physical altercation between Mr. Nash and his then-wife Antoinette Nash.  After the state initiated prosecution against Mr. Nash for domestic violence and aggravated menacing, this matter proceeded to trial, where the parties offered conflicting accounts of what transpired on the date of the incident in question.

{¶3}  According to Ms. Nash, on the date in question, an argument arose between her and Mr. Nash about their finances.  As she swept the floor in the living room of their home, Mr. Nash grabbed the broom from her.  In so doing, Mr. Nash struck one of their children, which led to an escalation of the feud between the couple.  Mr. Nash proceeded to force Ms. Nash against the blinds in the living room.  She momentarily broke free from his grasp, but then he shoved her against another set of blinds in the dining room.  She fought back by kneeing him in the groin, but then he slammed her to the ground and restrained her on the floor.  Mr. Nash eventually relented, at which point Ms. Nash ordered him to pack his things and leave.

{¶4}  Later, as Ms. Nash texted her mother to explain the fracas, Mr. Nash grabbed the phone from her hands and started reading her text messages.  When she tried to recover her phone, he pulled out a firearm.  Mr. Nash then followed Ms. Nash around the house while he read the messages, as she cried and pleaded for her life.  Mr. Nash ultimately yielded, declaring that he was going to commit suicide as he exited the house.

2

{¶5} Next, Ms. Nash took their children and decamped to Mr. Nash's mother's house, where the children would spend the night while Ms. Nash stayed at her uncle's house (ostensibly for safety reasons). Ms. Nash contacted the police the following day. The responding officer testified that he observed signs of bruising on her upper body, but nothing that would be apparent in a photograph. He went to the scene of the altercation, where he noticed that the blinds of the home appeared damaged and in disarray. The officer also found a handgun magazine in Mr. Nash's vehicle.

{¶6} Mr. Nash shared an entirely different story. He testified that, on the day of the altercation, tensions escalated between the couple because, a few days prior, one of their children ingested a toxic substance while under Ms. Nash's supervision, resulting in a hospital trip. Exacerbating those tensions, the couple began bickering about how to spend the COVID-19 stimulus check. With Mr. Nash ignoring Ms. Nash's retorts, she eventually got his attention by striking him on the shin with a hammer. He then seized the hammer and fled up the stairs. Ms. Nash chased him around the house for some time, but she eventually surrendered, packed up her things, and left the home. Mr. Nash insists that he never pushed her against the blinds and did not brandish a firearm on the date of the altercation. In fact, he testified that he had not owned a firearm for years and that the magazine in his vehicle belonged to a gun that he no longer owned.

{¶7} After the altercation, Mr. Nash went to his mother's house. Mr. Nash's mother testified that his leg was red and swollen, and that she gave him a bag of frozen vegetables to ice it. His mother urged him not to contact the police because she did not think that would be in the children's best interest.

{¶8} After sifting through the conflicting evidence, the trial court ultimately convicted Mr. Nash for first-degree-misdemeanor domestic violence and fourth-degree menacing (a lesser included offense of aggravated menacing). Mr. Nash now appeals those

3

convictions, challenging the manifest weight of the evidence in support of the convictions and alleging deprivation of his right to effective assistance of counsel.

II.

{¶9} Mr. Nash's first assignment of error maintains that his convictions ran against the manifest weight of the evidence. In reviewing whether a conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 7 (1st Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶10} The trial court convicted Mr. Nash of first-degree domestic violence under R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶11} Mr. Nash portrays the evidence as weighing heavily against the trial court's finding that he knowingly caused physical harm to Ms. Nash. For this point, he pounces on testimonial inconsistencies between the defense and prosecution witnesses. Namely, he notes that Ms. Nash knew that a domestic violence conviction would impede his ability to gain custody over their children and become a registered nurse, implying that her testimony lacks credibility because of her motive to fabricate. He also insists that evidence of Ms. Nash's injuries lacks credibility in light of his mother's testimony that she had no apparent injuries when she dropped the children off at her home. Ultimately, however, it is well-settled that " 'a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. Mr. Nash's conviction for domestic violence is not against the weight

4

of the evidence simply because the trial court resolved credibility issues in favor of the state, particularly when measured against the entirety of the evidence in the present record. We overrule Mr. Nash's challenge to the weight of the evidence in support of his domestic violence conviction.

{¶12} Next, Mr. Nash challenges his conviction for fourth-degree menacing under R.C. 2903.22, which reads that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶13} Mr. Nash again points to testimonial inconsistencies between the defense and prosecution witnesses. In that vein, he claims that Ms. Nash's allegation that he brandished a firearm is not credible because he testified that he had not owned a firearm for many years and his mother explained that Ms. Nash made no mention of whether he possessed a gun. He also highlights the improbability of Ms. Nash leaving their children with his mother if she actually believed that he posed a threat of physical harm to others. Of course, a conviction is not against the weight of the evidence merely because the trial court did not believe the defense testimony. And while Ms. Nash's decision to leave their children with Mr. Nash's mother might bolster the defense position, we do not believe that this fact alone establishes that the evidence weighs heavily against the conviction. In considering the totality of evidence in the record at hand, we overrule Mr. Nash's first assignment of error.

III.

{¶14} Mr. Nash's second assignment of error alleges deprivation of his right to effective assistance of counsel because his trial counsel did not introduce photographs of his leg injury. " 'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' " *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002),

quoting *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Furthermore, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland* at 694.

{¶15} Mr. Nash posits that defense counsel acted unreasonably by failing to admit photographs of his leg injury, particularly in a case where the credibility of the witnesses hangs in the balance. But we see nothing in the record that definitively establishes that those photographs even exist, let alone that a reasonable probability exists that they would alter the outcome of the proceedings. Without evidence of the photographs, we cannot evaluate the reasonableness of counsel's decision given the record at hand. Accordingly, Mr. Nash has failed to demonstrate deficient performance by counsel, and we overrule his second assignment of error.

\*　　\*　　\*

{¶16} In light of the foregoing, we overrule Mr. Nash's two assignments of error and affirm the judgments of the trial court.

Judgments affirmed.

**ZAYAS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.