[Cite as *State v. Barber*, 2024-Ohio-1043.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230473 |
| | | TRIAL NO. 23CRB-13844 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| MARLON BARBER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:    Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 22, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Connor E. Wood*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Schuh & Goldberg, LLP,* and *Brian T. Goldberg*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1}    Defendant-appellant Marlon[1] Barber appeals from the trial court's judgment convicting him, after a bench trial, of assault.  In his sole assignment of error, Barber challenges the sufficiency and weight of his conviction.  Because Barber raises matters as to the credibility of a witness, which were best resolved by the factfinder, and because the state presented sufficient evidence of the assault, including both testimony and physical evidence, we overrule Barber's assignment of error and affirm the judgment of the trial court.

*Factual and Procedural Background*

{¶2}    Barber was charged with assault and domestic violence on August 10, 2023.  The victim was K.B., Barber's romantic partner since 2018.  The case proceeded to a bench trial on September 7, 2023.

{¶3}    K.B. testified at trial.  She and Barber had been together since 2018, but they began living together in 2021.  In the early morning hours of August 10, 2023, K.B. awoke to Barber yelling at her for allegedly locking him out.  According to K.B., Barber then pushed her down each time she tried to get out of bed and started hitting her on the head.  Barber then threw her to the ground by her hair and kicked her as she was on the ground.  Barber spent the night on the couch like he usually did.  K.B. did not call the police that night or try to escape out of fear of what Barber would do in response.

{¶4}    She further testified that Barber dropped her off at work later that morning, and she called the police from there.  Barber was arrested in the parking lot

---

[1] Though Barber is referred to as "Marion Barber" in some documents, we use the spelling in his briefing, "Marlon."

of K.B.'s workplace when officers discovered Barber had an outstanding warrant. Officers took pictures of K.B.'s injuries that same day. She had a visible eye clot and bruising on her forehead and right forearm.

{¶5} On cross-examination, K.B. was questioned as to the differences in her written statement to the police on the date of the incident and her trial testimony. In her written statement, she said Barber strangled her. But at trial, she testified he struck her multiple times, pulled her hair, and kicked her.

{¶6} Officer Noah Reinhart testified to what Barber told him on arrest. Barber claimed that if K.B. had any injuries, they were from a prior altercation that took place between K.B. and Barber in Columbus.

{¶7} At the close of the state's case, Barber moved for an acquittal under Crim.R. 29, which the trial court denied.

{¶8} In his testimony at trial, Barber maintained that K.B.'s injuries were from a prior altercation in Columbus around August 7, 2023. According to Barber, K.B. had attacked him on more than one occasion while they were in Columbus for K.B.'s work conference and that was why she was photographed with injuries days later on August 10, 2023. Barber further testified that there was no altercation that occurred in the early morning hours of August 10, 2023, and that there was no animosity between him and K.B. when he dropped her off at work.

{¶9} In making its findings, the trial court reasoned that this case came down to the issue of credibility. The trial court found K.B. to be more credible. The trial court did not find it unusual that there were a few inconsistencies between K.B.'s written statement and courtroom testimony, given the violent nature of the allegations against Barber. Further, the trial court found it was important that there were photos

of K.B.'s injuries taken contemporaneously with her interview on the date of the incident.

{¶10} The trial court found Barber guilty of assault but not of domestic violence. The trial court concluded that the state had not proven beyond a reasonable doubt that K.B. and Barber were family or household members as required under Ohio's domestic violence statute. Barber was sentenced to 180 days of incarceration.

{¶11} He now appeals.

### *Sufficiency and Weight*

{¶12} In a single assignment of error, Barber raises sufficiency and weight challenges to his misdemeanor assault conviction. In doing so, Barber argues that both parties admitted to a prior altercation in Columbus, there were inconsistencies with K.B.'s story, and K.B. did not call the police after Barber attacked her in her bedroom.

{¶13} To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *see State v. Curry,* 1st Dist. Hamilton No. C-190107, 2020-Ohio-1230, ¶ 11.

{¶14} But when reviewing a challenge to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). Unlike our review of a sufficiency challenge, review of a manifest-weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly

4

lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *Thompkins* at 397. However, we will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 1st Dist. Hamilton No. C-190462, 2021-Ohio-1319, ¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{**¶15**} To prove misdemeanor assault under R.C. 2903.13(A), the state must demonstrate that Barber knowingly caused or attempted to cause physical harm to K.B. *See State v. Baker*, 1st Dist. Hamilton Nos. C-120470 and C-120471, 2013-Ohio-2507, ¶ 10. The state presented sufficient evidence on these elements at trial. K.B. identified Barber as the person who caused her physical injuries, and she described numerous acts he took to harm her, including pulling her off of the bed, hitting her, and kicking her. K.B.'s testimony was sufficient to establish the elements of assault. *See id.*

{**¶16**} In addition to challenging the sufficiency of the evidence, Barber also invites us to reweigh the evidence presented at trial and to find his testimony more credible than K.B.'s. But "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Johnson*, 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, ¶ 52. "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Id.* Thus, the trial court was in the best position to resolve matters of credibility, and we must defer to its decision to give more weight to K.B.'s testimony.

{**¶17**} In that regard, K.B. denied that there were any prior altercations in Columbus. And as the trial court noted in making its findings, it was not unusual for

there to be some degrees of inconsistency between a witness's written statement and trial testimony in a courtroom setting. As the state points out, these minor inconsistencies and K.B.'s delay in calling the police are explained by K.B.'s testimony that she feared Barber on the night of the attack, since he remained in her apartment on her couch. Adding to the trial court's credibility assessment was physical evidence of the assault. The photos that officers had taken of K.B. on the same day as the altercation corroborated her testimony at trial.

{¶18} Accordingly, given that K.B. explained the delay in calling the police, that minor inconsistencies in statements to the police and trial testimony are not unusual in assault cases, and that photographic evidence corroborated K.B.'s statements at trial, we cannot say that Barber's conviction was against the manifest weight of the evidence.

{¶19} We therefore overrule Barber's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.